Debra THOMAS, a Minor, by and through Betty Thomas, her mother and next friend, Appellant,

v.

James WADE, Respondent.

No. 48688.

Supreme Court of Missouri,

En Banc.
Nov. 14, 1962.

James Hullverson, Corinne Richardson, Hullverson, Richardson & Hullverson, St. Louis, for appellant.

Gray & Jeans, James W. Jeans, St. Louis, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from an adverse judgment entered on a jury verdict for defendant in her suit for $35,000 for personal injuries. She contends that an instruction given at the request of defendant was erroneous and that prejudicial error resulted in the admission of certain evidence.

Shortly after noon on July 28, 1959, Debra Thomas, age 23 months, was running westward on the sidewalk in the 2600 block of Pine Street, St. Louis, Missouri. At about the middle of the block she turned and ran into the street at a 45-degree angle and into the right side of defendant's automobile which was traveling westward about 20 or 30 miles an hour. Defendant did not see Debra before the accident, but stopped his automobile immediately when he heard a "thump."

Plaintiff submitted her case to the jury on two separate verdict directing instructions. Instruction No. 2, commonly called a "lookout" instruction, advised the jury that it was the duty of the defendant to exercise the highest degree of care to keep and maintain a careful and vigilant watch and lookout both ahead and to the side of his intended path not only for adults but for small children who might thoughtlessly or impulsively run toward the path or side of his car. It then submitted that if the jury found defendant was driving his automobile west on Pine Street and there were no vehicles parked between his automobile and where Debra was running on the sidewalk; that Debra turned and ran in a diagonal

direction into the street until she came in contact with the right front side of defendant's automobile and defendant never saw her before the collision; that defendant failed to exercise the highest degree of care to keep a careful and vigilant lookout for persons, including children, "who might be approaching his path and that had he exercised such care he could have seen [Debra] in time, by the exercise of the highest degree of care, to have avoided her injury;" then if the jury found that such failure on the part of the defendant to keep such a careful and vigilant lookout was either the sole cause or one of the contributing causes of injury to Debra, their verdict should be in her favor.

The other verdict directing instruction for plaintiff, Instruction No. 3, first hypothesized the facts as set out in the previous instruction. It then submitted that if the jury found that by the exercise of the highest degree of care the defendant "could have seen the plaintiff running into the street and into the path of his automobile" in time, by the exercise of the highest degree of care, to have either stopped his automobile or to have slackened its speed and turned aside or to have sounded a signal of his approach and movement, and by doing any one of those things he could have avoided injury to Debra but failed to do so, then if such failure directly contributed to cause injury to Debra the verdict should be in her favor even if some act or failure to act on her part or on the part of her parents also contributed to cause her injury.

The instruction submitted at the request of defendant and of which plaintiff complains states that "under the law there was no duty on the part of Mr. Wade to stop his automobile or slacken its speed and turn it aside or sound a warning of his approach and movement until he knew, or, in the exercise of the highest degree of care, should have known, that there was danger of his automobile coming into contact with the plaintiff." It then submitted that if the jury found from the evidence that after defendant knew, or in the exercise of the

highest degree of care should have known, "that there was danger of the plaintiff coming in contact with his automobile, it was then too late, if you so find, for him, by the exercise of the highest degree of care, either to have stopped his automobile or to have slackened its speed and turned aside his automobile, or to have sounded a signal of his approach and movement and thus and thereby have avoided the collision," their verdict should be for defendant.

Plaintiff asserts that Instruction No. 4 "wholly ignored defendant's duty to keep a lookout;" that it told the jury that "the only duty owed by the defendant was to act after a 'danger' of collision arose;" and that it "erroneously confined defendant's duty * * * to act at such time as there was actual 'danger' of plaintiff coming into contact with defendant's vehicle, wholly ignoring defendant's duty to anticipate the possibility of danger and injury to plaintiff."

In this relatively simple and easily understood factual situation plaintiff has submitted two verdict directing instructions which admittedly submit different theories of negligence but are in some respects overlapping. The basic submission of each is the failure to see and to take some action. The "lookout" instruction in some respects necessarily constitutes a "roving commission" in that the jury is authorized to find "any means supported by the evidence by which the driver * * * could have avoided the collision" without the instruction hypothesizing those means. Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 25. There is no contention that the evidence supports any means other than those referred to in defendant's Instruction No. 4, which includes at least one more than those hypothesized in plaintiff's Instruction No. 3.

■ Plaintiff asserts that defendant's duty to maintain a lookout as submitted in Instruction No. 2 "encompasses the obligation to see the plaintiff on the sidewalk" when he had a clear view. Apparently the plaintiff would include the duty to see a

person walking or standing on a sidewalk even though not moving toward the street. Under certain factual situations that may be so because the duty of a motorist to maintain a vigilant lookout requires that he "look in such observant manner as to enable him to see what one in the exercise of the highest degree of care for himself and others could and should have seen under similar circumstances." Hildreth v. Key, Mo.App., 341 S.W.2d 601; Riley v. Young, Mo.App., 218 S.W.2d 805, 808; Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 586. Plaintiff apparently admits, however, that something more than failure to see is required to result in actionable negligence because in Instruction No. 2 she submitted the failure to keep a careful and vigilant lookout for persons "who might be approaching his path" and that if defendant had maintained that lookout he could "have avoided her injury." It is obvious that a violation by the operator of a vehicle of the duty to maintain a vigilant and careful lookout in failing to see a person not directly in but close to his path and who was moving farther away from the path of the vehicle, while perhaps theoretically constituting negligence, would not be actionable negligence. Therefore, when we analyze a "lookout" instruction, at least when applied to the situation where the injured party was not directly in the path of the vehicle when the duty to see first arose, it actually submits failure to see and failure to avoid injury by "any means supported by the evidence." Moore v. Ready Mixed Concrete Co., supra. The question then is, when does the duty to act arise? It is not necessarily at the exact time there was a duty to see. Under the facts of this case, if the duty to see and the duty to act arose at the precise time, then under plaintiff's theory every motorist driving on a city street would have to slow, stop, warn, or slacken his speed every time he saw or should have seen a child or elderly person, or possibly any person, on the sidewalk even though not approaching the street or the path of the vehicle. While it may be stated in various ways, and possibly in ways better than the manner it was expressed in Instruction No. 4, the duty to act when one does or should see arises at the time that a person, in the exercise of the highest degree of care, knew or should have known that there was danger, that is, a likelihood of injury. See the discussion of this issue in Nydegger v. Mason, Mo., 315 S.W.2d 816, 819. In the case of a child, that danger or likelihood of injury might well be at the time the child turned toward the street, or possibly even before that time depending upon all the circumstances. Plaintiff submitted that defendant should have seen Debra at the time she "might be approaching his path" and that he then should have acted. In other words, defendant should have acted when a person, in the exercise of the highest degree of care, would have reason to anticipate danger. This is what defendant submitted in the converse. It was for the jury to determine when that situation came into existence from all the facts and circumstances.

■ The basic and essential issue here presented is what would a jury understand Instruction No. 4 to mean in the circumstances of reading it together with plaintiff's two verdict directing instructions. All three instructions involved the duty to see and then to take action. We think any reasonably intelligent jury would not have been misled by the language used in Instruction No. 4, including the word "danger," any more than by the use of the term "might be approaching" used in plaintiff's Instruction No. 2. While we agree that it might be said that Instruction No. 4 was inartfully drafted under the circumstances, such objections to the instruction as made by plaintiff based on the wording of Instruction No. 4 must be weighed against the language used by plaintiff in her instructions which defendant is required not to ignore, but must converse in such a way not to constitute a comment on the evidence and still present the issues to the jury in as straight forward manner as reasonably possible.

■ Under the circumstances of this case Instruction No. 4 is not a misstatement of the law, and when we consider all the instructions together, we do not see how the jury possibly could have been led to believe that it could or should find for defendant pursuant to Instruction No. 4 even though it believed and found the issues as submitted in Instruction No. 2. When this is true, as we are convinced it is, no reversible error resulted from Instruction No. 4.

Plaintiff next asserts that the trial court erred in permitting defendant to read to the jury an alleged statement of George Smith contained in a police report.

Police officer Edward O. Moore investigated the accident, prepared a report, and took a signed statement from defendant and from George Smith, a witness to the accident. Officer Moore testified that he had no independent recollection of what was said to him in the course of his investigation. He identified a folder as "containing all the information pertaining to this accident," and stated that the records in the folder were kept in the usual course of the accident investigation, and that he obtained the folder and its contents from the record room at the St. Louis Police Department but that he was not the custodian of the records. After counsel for plaintiff examined the records he then said: "I don't think they are proper records, but I will withdraw an objection to these records as such. As to the contents thereof, certain portions may or may not be objectionable. I will waive the objection as to their authenticity." Neither the folder nor the contents were offered in evidence.

When George Smith testified he denied that a vehicle was parked at the scene of the accident and he also denied that he had said there was. Later, counsel for defendant offered to read from the police report, which had been prepared in the usual course of the accident investigation from material furnished by Officer Moore, the statement contained therein that George Smith "stated that the child ran into the street from behind an auto parked at the curb and ran into the side of Wade's automobile." The trial court permitted the statement to be read to the jury on "the theory of the prior inconsistent statement." The specific objection made by plaintiff at the time was that "it is hearsay and being read from photostatic copy, the original not introduced in evidence, and there has been no identification as to whom it was made, and it is the rankest form of hearsay."

■ On this appeal plaintiff seeks to assign other reasons why the admission of the statement was erroneous, but a trial court is not to be convicted of error in the admission of evidence for reasons not presented to it at the time. "It is well settled that an objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else the trial court will not be convicted of error for overruling it." Goodman v. Allen Cab. Co., 360 Mo. 1094, 232 S.W.2d 535, 539. See also Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97; Hoffman v. St. Louis Public Service Co., Mo., 255 S.W. 2d 736. The statement was not of such nature that it obviously was not admissible for any purpose. For that reason it does not come under what has been termed a modification of the above rule that the error of admitting the evidence may be considered even though not the subject of specific objection "when it is apparent that the evidence is self-evidently wholly incompetent for any purpose or it is obviously unjustly inflammatory and prejudicial and can serve no purpose whatever in the case." Hoffman v. St. Louis Public Service Co., supra, 255 S.W.2d at p. 742.

■ Section 490.680 RSMo 1959, V.A. M.S., provides that "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act,

condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." In her brief plaintiff neither denies nor asserts unequivocally that she intended to or did admit that the police report qualified for admission in evidence pursuant to the above statutory provision. It is apparent, however, from a reading of the entire record that at the time the above "waivers" occurred, counsel and the trial court considered them to apply to the qualification of the records under the Uniform Business Records Act, and we believe that is the only reasonable conclusion to be gathered from all the circumstances. In addition, plaintiff had part of the records read to the jury by Officer Moore. It is true that the parts she had read were the original copies of signed statements, but she made no effort to show they were admissible for any reason other than that they were a part of the regularly kept records of the Metropolitan Police Department. She cannot treat the records as qualifying under the Uniform Business Records Act for matters therein she wants to place before the jury, and deny they are so qualified for matters therein the defendant wants to present. Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859. In ruling on the admissibility of the statement we shall consider that the police report was a record of an act or event (the statement by George Smith) which was made in the regular course of business by the Metropolitan Police Department at or near the time of the act or event, and that the source of information, method and time of preparation were such to justify its admission in evidence. This "eliminates the hearsay objection [to the police report] * * * but it does not make admissible any evidence which would be incompetent if offered in person," Ryan v. Campbell, "66" Express, Inc., Mo., 304 S.W.2d 825, and it does not make relevant that which otherwise would not be relevant, and any part of the record is subject to objection "on grounds other than hearsay generally." Allen v. St. Louis Public Service Company, 365 Mo. 677, 285

S.W.2d 663, 666, 55 A.L.R.2d 1022. We shall now examine the objections made by plaintiff to that part of the police report which was read by defendant to the jury.

■ Plaintiff's objection that the statement was being read from a photostatic copy and that the original had not been introduced in evidence obviously was without merit. In her brief plaintiff ignores her express waiver as to the authenticity of the records. She cites cases, such as Miller v. John Hancock Mutual Life Ins. Co., Mo. App., 155 S.W.2d 324, pertaining to the rule that secondary evidence is not admissible unless it is made manifest that the primary evidence is unavailable. That rule is correct, but it has no application where the objecting party has agreed that a photostatic copy may be used in lieu of the original document.

The objection that "it [the police record] is hearsay" and "it is the rankest form of hearsay" was not a valid objection. It may be admitted that the part of the record containing the statement which was read to the jury was hearsay, but "objections to such records as hearsay * * * are, * * * not effective if the records have been properly qualified [either by proof or admission] under the Uniform Business Records Act," and it is only when "specific and legally proper objections are made to parts of the record, on grounds other than hearsay generally, [that] such parts may be properly excluded." Allen v. St. Louis Public Service Company, supra, 285 S.W.2d at p. 666. In her brief plaintiff attempts to broaden the general hearsay objection made at the time to include other matters, but we are not called upon to determine whether the trial court would have erred by overruling such objections if they had been presented to him.

■ The remaining objection, that "there has been no identification as to whom it [the statement] was made," also was without merit. The circumstances show that the statement could only have

been made to Officer Moore or in his presence, at least the record does not affirmatively show on its face that it was not so made. See Kraus v. Kansas City Public Service Co., Mo., 269 S.W.2d 743. In view of the proof by defendant and the waivers of plaintiff the trial court was justified in finding that the source of information, and the method and time of preparation, were such as to justify its admission. That is all that is required in this respect under the Uniform Business Records Act after proof, or waiver of proof, of the identity of the record, its mode of preparation and the fact that it was prepared in the regular course of business at or near the time of the act, condition, or event. The person to whom the statement was made, or who heard it, could properly testify in person that George Smith made the statement. One purpose of the Uniform Business Records Act is to make such record evidence admissible (assuming the making of the record of such act, condition or event meets the minimum requirements) when the person cannot testify personally because he is unavailable, or as in this case has no personal recollection of the act.

In her brief plaintiff does not meet directly the issue presented by reason of her waiver of the necessary proof that the records were qualified under the Uniform Business Records Act. Instead, she cites, among other cases, Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577; Kraus v. Kansas City Public Service Co., Mo., 269 S.W.2d 743; and Kleithermes Motor Co. v. Cole Motor Service, Mo.App., 102 S.W.2d 819, where there was a failure of proof that a record qualified under the Uniform Business Records Act and there was no waiver. Those cases do not rule the issue here. In view of the circumstances we cannot convict the trial court of error in permitting the statement in the police report to be read to the jury for the reasons assigned by plaintiff.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court en Banc.

Affirmed.

All concur.