Eugene STEGALL, Appellant,

v.

Stephen L. WILSON, Respondent.

No. 24642.

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

Richard A. Rubins, Arthur J. Kase, Rubins, Kase & Rubins, Kansas City, for appellant.

Donald L. Shughart, Shughart, Thomson & Kilroy, Kansas City, for respondent.

BLAIR, Judge.

The plaintiff, Eugene Stegall, sued the defendant. Stephen L. Wilson, for $10,000.00 for personal injuries he claimed he received as a result of a collision between his motor scooter and attached sidecar and defendant Wilson's automobile. The verdict and judgment were for Wilson, the defendant, and Stegall, the plaintiff, appeals.

Stegall was employed as a delivery man by the Colgan Engraving Company in Kansas City. Colgan is located on the north side of Tenth Street between Central and Broadway Streets. Tenth Street runs east and west. It has two north lanes for westbound traffic and two south lanes for eastbound traffic. It also has one lane for parking on both the north and south sides of these traffic lanes. There is a parking lot adjacent to the Colgan building. There Stegall parked his motor scooter and attached sidecar when it was not in use for deliveries.

Stegall testified as follows: On the day of the collision he was ordered to deliver some packages. He placed them in the sidecar, started the scooter's motor and proceeded south on the parking lot driveway to the north edge of Tenth Street and then stopped. He waited for traffic to clear. When it cleared, he proceeded south across the parking lane and the two traffic lanes, all on the north side of the street, and to the street's center. As he crossed these lanes, he was traveling in a southeasterly direction, but at an angle so "slight" that he described his course from the parking lot to the center of the street as "almost point blank". When he reached the center of the street he was traveling 4 or 5 miles an hour. Then he increased his speed to 8 or 9 miles an hour and drove into the eastbound right hand lane of the street and turned east. At that time he saw defendant Wilson's automobile in the eastbound left lane adjacent to his own right lane standing still and headed east at a distance of 30 or 35 feet ahead of him. He testified "Q Then you did proceed into that—or on that right hand lane all the way up to where the collision occurred? A Yes, I did. Q And was the lane that you were in—or describe to the jury what there was in the lane that you were in on up to the corner ahead of you? A There wasn't anything in the lane I was in. His car—it's a two lane going each way—his car was in the center (eastbound) lane next to the dividing line (of the street). I was in the far right (adjacent eastbound) lane and I continued on up the street in the far right lane and there was no cars in the lane at all. Q Was there any cars in the lane ahead of Mr. Wilson? A No, there wasn't. Q Was there any cars behind him? A No,

there wasn't. Q Could you see anything in the street that might obstruct or block the vision to either you or him? A No." (Parentheses ours) As he proceeded directly east in his own lane to a point within 10 or 15 feet of Wilson's automobile, it was continuing to stand still in its own lane. On the instant, Wilson, without giving any sort of signal, began backing his automobile from his own left hand lane into Stegall's right hand lane. At that moment Stegall's speed was 10 or 12 miles an hour. The vehicles collided.

Wilson admitted he gave no signal of any sort before he began backing his automobile into Stegall's lane. He admitted that he was wholly unaware of the presence of Stegall's motor scooter on the street until immediately *after* the collision. He admitted that the right rear end of his automobile was 1 to 2 feet inside Stegall's lane and that his vehicle was still moving backward at the time the vehicles collided. He stated the purpose of his backing maneuver was to cross Stegall's lane and to enter the parking lane just beyond and park his automobile. Stegall testified that when Wilson started backing into his lane it was too late for him to take any precautionary measure to avoid the collision. There was no evidence concerning the distance in which the motor scooter moving 10 to 12 miles an hour could be stopped. There was no evidence concerning its maneuverability, except Stegall's testimony that he could not swerve sharply to the right and away from Wilson's backing automobile without danger of his scooter turning over and likely throwing him into Wilson's path.

The trial court instructed the jury that it should find for Wilson, whether or not he was negligent, if it believed: First, that Stegall failed to keep a careful lookout; and second, that Stegall's conduct, in failing to keep such lookout, was negligence; and third, that such negligence directly caused or contributed to cause any damage Stegall might have sustained. M.A.I. 28.01. Stegall asserts that there is no evidence

in this record that he failed to keep a careful lookout and that this instruction was reversible error.

■ The burden rests on Wilson to point to substantial evidence in this record that Stegall was contributorily negligent by failing to keep such a lookout. Clark v. Howard, Mo.App., 273 S.W.2d 771, 774; 22 Mo.Digest, Negligence, ▬ While sometimes contributory negligence may be inferred "from the attending surroundings and circumstances," regardless of oral evidence to the contrary, See v. Kelly, Mo.App., 363 S.W.2d 213, 216, there are no such "attending surroundings and circumstances" in this record, standing alone, to justify a finding that Stegall was guilty of contributory negligence. Consequently resort can be had only to the oral evidence to determine this controversy. Concerning the collision only Stegall and Wilson testified. Wilson could shed no light on this question because he was wholly unaware of the presence of Stegall's motor scooter on the street until immediately *after* the collision. Inevitably it results that Wilson's only recourse is to place his reliance on Stegall's testimony in his effort to convict Stegall of failing to keep a careful lookout. Chandler v. Mueller, Mo., 377 S.W.2d 288.

We have recited Stegall's testimony fairly and it is all contrary to Wilson's contentions. Summing up his testimony, and viewing it objectively, it was in essence that he was assessing the whole area, including his lane, Wilson's adjacent lane and the standstill position of Wilson's automobile in that lane, from the time he entered his own lane and began proceeding east until the time Wilson suddenly began backing his automobile from his lane into Stegall's lane. What we have said is not weighing the evidence but merely reciting the *only* relevant evidence bearing on the question before us. The only reasonable conclusion from this evidence is that Stegall was keeping a careful lookout ahead and laterally from the time he observed Wilson's

automobile standing in the adjacent lane at a distance of 30 or 35 feet ahead of him until the vehicles collided in Stegall's lane.

■ Even though a motorist negligently fails to keep a careful lookout and to see another motorist and to realize that a collision will likely occur if he does not take some precautionary measure, this alone does not warrant a lookout instruction, unless in addition there is substantial evidence that he "had the means and ability to have so acted that a collision would have been avoided" if he had kept such a lookout. Boehm v. St. Louis Public Service Co., Mo., 368 S.W.2d 361, 367; Moore v. Ready Mix Concrete Co., Mo., 329 S.W.2d 14, 25; Creech v. Riss & Co., Mo., 285 S.W.2d 554, 563; Miller v. St. Louis Public Service Company, Mo., 389 S.W.2d 769. "Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signaling equipment with which to warn, or braking apparatus with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged to take effective action in avoidance." Zalle v. Underwood, Mo., 372 S.W.2d 98, 102. Therefore negligent failure by Stegall to keep a careful lookout cannot be established in the absence of substantial evidence from which a jury could find that by exercising the highest degree of care he could have seen Wilson's automobile moving backward in time thereafter to have taken some effective precautionary measure.

Stegall argues that there was no effective precautionary measure he could have taken when Wilson began backing into his lane. In his brief, Wilson agrees that Stegall was: "In the outside lane of traffic with the defendant's automobile in the inside lane of traffic" and that "plaintiff was about ten to fifteen feet behind the defendant's automobile" at the time he began backing from his lane into Stegall's. He does not question Stegall's speed at

that time, 10 to 12 miles per hour. He adopts it. In his testimony he admits he was unaware of Stegall's presence anywhere on the street until immediately *after* the collision. He admits he gave no signal of any sort or otherwise indicated that he intended to back from his lane into Stegall's except the signal the beginning of his backing maneuver was calculated to convey. He admits he had backed 1 to 2 feet into Stegall's lane at the time of the impact.

■ Stegall was where he had a right to be. He had a right to assume, as he began proceeding east in his own lane at 10 or 12 miles an hour within 30 or 35 feet behind Wilson, that Wilson would not suddenly and heedlessly back into his lane until Wilson signaled he was going to do so by suddenly beginning to back from his own lane into Stegall's. 4 Mo.Digest, Automobiles, ☞206. Not until Wilson gave this signal did the vise of lookout law tighten on all that followed. Only from *that instant on can we determine if Stegall*, whether or not he was looking, and the evidence is that he was, had the ability and the means thereafter to avoid the collision that followed.

As we have observed, there was no evidence concerning the distance in which the motor scooter, then moving 10 to 12 miles an hour, could be stopped and none concerning its maneuverability, except Stegall's testimony that he could not swerve sharply to the right and away from Wilson's backing automobile without danger of his motor scooter turning over and likely throwing him into Wilson's path. He testified that when Wilson started backing into his lane it was too late for him to do anything. Wilson puts forward no argument that Stegall could have done anything to avoid the collision after he started backing into Stegall's lane when Stegall was only 10 to 15 feet behind him.

■ Giving Wilson the advantage of Stegall's lower speed, 10 miles per hour, and the benefit of the maximum distance sepa-

rating the two vehicles, 15 feet, Stegall was traveling at the rate of 14.6 feet per second and would have reached Wilson in just an infinitesimal fraction more than one second, i. e., that fraction of a second required for him to move the remaining .4 of one foot. All this assumes that Wilson's vehicle was stationary. We take judicial notice that the average reaction time of an individual is $\frac{3}{4}$ths of a second. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788. In $\frac{3}{4}$ths of a second Stegall traveled 10.95 feet before he could react and act. This left him only 4.05 feet and only $\frac{1}{4}$th of a second in which to take some precautionary measure that would avoid the collision. In making these calculations, we have ignored the fact that during the time Stegall was moving forward over the 15 foot space, Wilson was moving diagonally backward from inside his own lane and to a distance of 1 to 2 feet inside Stegall's lane. This would further decrease the 4.05 feet figure. How much we need not calculate. We agree that the evidence in this record was wholly insufficient to warrant submitting failure to keep a careful lookout for there is no evidence that Stegall had the ability and means to take any action in avoidance of the collision when Wilson began his backing maneuver. The lookout instruction was reversible error.

Stegall contends that the trial court erred in excluding a "Vehicular Accident Report" of the Police Department of Kansas City, Missouri, which he offered as evidence. This exhibit was identified by Sergeant Brown, who was the official custodian of the records of the Kansas City Police Department. This officer testified that reports such as this one were "official business records" of the department, made by the investigating police officer immediately following an accident, and then delivered to him as custodian and thereafter kept by him as official custodian under his care and supervision as a part of the permanent records of the department. When this report was offered, counsel for Wilson objected to it in its entirety on the general ground that it was hearsay. The court sustained the objection that it was hearsay and stated as its reason that there was "no chance for cross examination of the party who made it". Counsel for Stegall then advised the court that the record was being offered as one covered by "[T]he Uniform Business Records as Evidence Law", Section 490.680, V.A.M.S., and that the very purpose of this Law was to create a statutory exception to the hearsay rule. Counsel's statement of the purpose of the Law was correct beyond all doubt. Rossomanno v. Laclede Cab Co., Mo., 328 S.W.2d 677; State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654; Adler v. Ewing, Mo.App., 347 S.W.2d 396; Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 666, 55 A.L.R.2d 1022. Nevertheless, the court allowed its ruling to stand. Counsel for Wilson then added that the report was additionally inadmissible because "It also contains conclusions of the officer which are not subject to cross-examination and merely a conclusion of the investigating officer which would be completely improper without proper cross-examination". Counsel for Stegall then said he desired to restrict his offer to only those portions of the report which (1) indicated that Stegall had been injured, (2) that Wilson had made a statement against his interest, and (3) the measurements which appeared on the diagram on the reverse side of the report. Counsel for Wilson objected "I make a *general objection* once again, Your Honor, to the portions he desires to introduce. They are conclusion on the part of the officer who did the investigation, both the plaintiff and the defendant who made these statements to this officer are in the court room. They can be asked the question whether or not they made any such statements, and have a chance, both of them, to deny such statements. So far as the diagram itself, I would have no objection—* * * as to that portion of it being introduced *if it* (sic) *was also supporting testimony from somebody that this is the true measurements*". (Emphasis

supplied) The court sustained this objection. Although on this appeal counsel for Wilson seeks to assign additional objections to the report, he did not make them in the trial court and they will be disregarded. Thomas v. Wade, Mo., 361 S.W.2d 671, 675.

Section 490.680, V.A.M.S. provides that "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Counsel for Wilson did not contend in the trial court that the records of a police department are not within the contemplation of "The Uniform Business Records as Evidence Law". He does not make that contention in this court. When counsel for Stegall advised the trial court that the record was being offered as one covered by that Law, the effect of the objections by counsel for Wilson was that nevertheless the report was objectionable because it was hearsay and contained conclusions. In this court he treats his objections as being governed by this Law and its judicial construction. Consequently, we see no need to consider the question whether the report is governed by this Law and for the purpose of our ruling we will treat it as if it were. Thomas v. Wade, Mo., 361 S.W.2d 671, 675.

There was no objection that the report failed to meet the requirements of Section 490.680 V.A.M.S. on the ground (1) that it was irrelevant, or (2) that the custodian did not testify to its identity and mode of preparation, or (3) that it was not made in the regular course of business at or near the time of the act, condition or event, or (4) that the trial court should hold the opinion that the sources of information, method and time of preparation were not such as to justify its admission. Nor did the trial court place its ruling on any of the statutory grounds. Its ruling was that the entire report was hearsay because there was "no chance for cross-examination of the party who made it", and that the last and restricted offer made by counsel for Stegall consisted of conclusions.

As we have stated, counsel for Stegall was quite correct in saying to the court that the very purpose of the Law was to create a statutory exception to the hearsay rule. Therefore, on this record we rule that the exclusion of the report on the ground that it was hearsay was plainly erroneous. Likewise we rule on this record that the exclusion of the portions of the report which counsel for Stegall offered later on the ground that they contained conclusions was just as erroneous. Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 667–668, 55 A.L.R.2d 1022. No proper objection to the report was made by counsel for Wilson which warranted the refusal to permit counsel for Stegall to show by the report that it indicated Stegall had been injured. There was no contention that what the report contained in this respect was merely Stegall's self-serving statement, or that his injury could not have been visible to the investigating officer, or that the report contained a conclusion on this subject that the officer was not qualified to express. If counsel for Wilson held any of these views he should have made them known to the trial court by specific objection, Thomas v. Wade, Mo., 361 S.W.2d 671, 675, and not relied on a general or blanket objection. We emphasize that by this we do not mean to hold that a police officer's report which undertakes to diagnose the nature and extent of the injuries of a victim of a collision is admissible if a specific objection is made. There was no proper objection made to the part of the report which was said to contain a statement by Wilson against his own interest. Surely a statement by Wilson to the investigating officer against his own interest was admissible. Actual examination of the report shows that the statement made by Wilson

was not a conclusion but a statement of facts. There was no proper objection to the measurements which appeared on the diagram on the reverse side of the report. They do not purport to be mere estimates of distances made by the officer but measurements he actually made. Surely if one actually measures a distance as being 10, 20 or 30 feet and states the measurement he made in feet, that statement is not inadmissible even though it is a conclusion. We have dealt only with the precise objections made in the trial court by counsel for Wilson. We have declined to deal with any objections he failed to make in the trial court or objections he raises for the first time in this court. Thomas v. Wade, Mo., 361 S.W.2d 671, 675.

For all of the reasons recited, the judgment is reversed and the cause is remanded for a new trial.

All concur.