James W. LAWSON, Plaintiff-Respondent,

v.

Gary R. COOPER, Defendant-Appellant.

No. 25430.

Missouri Court of Appeals,
Kansas City District.

Jan. 6, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 7, 1972.

Application to Transfer Denied Feb. 22, 1972.

Walter F. Moudy, Morris, Foust, Moudy & Beckett, Kansas City, for defendant-appellant.

E. J. Murphy, Butler, for plaintiff-respondent.

CROSS, Judge.

Defendant has appealed from a judgment entered upon a jury verdict awarding plaintiff $10,000.00 damages for personal injuries suffered in a multiple motor vehicle collision. Defendant raises no appeal issue as to his liability. He complains only that the court erred (1) in receiving certain evidence, (2) in refusing to declare a mistrial because of claimed improper argument by plaintiff's counsel and (3) in refusing to order a remittitur.

The only evidence in the case pertaining to the collision and its cause was produced by plaintiff. Defendant took the stand, but called no other witness on his behalf. He testified that he was rendered unconscious by the accident and remained in that condition for five or six days. He claimed that he had no memory of the accident and could not tell the jury how it occurred. Plaintiff's evidence establishes essential facts as here stated.

Plaintiff James W. Lawson, age 27 years, was engaged in business for himself, hauling mineral fertilizer and crushed rock. For those purposes he owned and used a 1967 Chevrolet two ton truck. On May 26, 1969, the day of the accident, he was hauling crushed rock for the Highway Department from a quarry located west of Butler, Missouri. It was a clear day and the pavement was dry. On his fourth (and last) trip of that day, after loading his truck in the early afternoon, he proceeded to drive it eastward on Highway 52, a two-lane, blacktop, rather hilly highway, with shoulders on each side, flanked by rather deep ditches, and with a posted daylight speed limit of 65 m. p. h. As plaintiff so proceeded he was following, at a distance of 150 to 200 feet, another gravel truck of like nature and load, belonging to and driven by a friend, Larry Ingram. Both trucks were traveling in the right hand (eastbound) lane at a speed of approximately 50 miles per hour.

So approaching the site of the accident (which was imminent) and at a point on the highway about two miles west of Butler, the two trucks were negotiating a long hill of moderate grade. When the lead truck (Ingram's) was some 500 to 600 feet from the hillcrest, a 1966 Chevelle driven by defendant, towing a trailer for transporting horses, suddenly came into view over the hilltop, headed west.

Both plaintiff and Ingram testified that the Chevelle and trailer were traveling at least 80 miles an hour when it crested the hill. When first observed at that point, defendant's Chevelle was on its own (right hand) side of the road, but the horse trailer had swung out to the left side of the car, to the extent that half of it was across the center line. Momentarily, the trailer came back behind the car, but "whipped" to the right onto the shoulder, and again whipped back across the center line. At that point defendant lost control and "the whole works, car, trailer and all" started to slide sideways into the left lane, "stretched clear

across the road". The Chevelle and trailer continued to slide sideways and forward clear across its left side of the road in front of the Ingram truck (which had gotten partly onto the south shoulder) striking it on the right corner of the front end and inflicting substantial damage to it. The impact knocked the trailer loose, and, as plaintiff stated, "the trailer come on down the highway and hit me." Plaintiff had attempted to evade the collision by braking and slowing his truck to approximately 20 m. p. h. before the trailer struck it. He also pulled to the right and was able to get the truck's right wheels onto the shoulder before the trailer hit it. The trailer was described as a tandem axle "two horse" trailer of metal construction, including a metal top. It was not carrying horses but was loaded with several hundred pounds of ground grain for horse feed. The impact of the trailer damaged plaintiff's truck extensively, as well as inflicting substantial personal injuries upon plaintiff, which will be more fully detailed in our discussion of defendant's complaint of the damage award.

Although plaintiff's petition charged defendant with negligence on three grounds, namely, failure to keep a careful lookout, operating his vehicle at excessive speed and driving on the wrong side of the road, plaintiff submitted his case solely on the issue of defendant's excessive speed by an instruction faithfully patterned from M.A.I. 17.01 and 17.03. The measure of damage instruction was M.A.I. 4.01 verbatim. Neither in his motion for new trial nor in his appeal has defendant challenged the submissibility of plaintiff's case or assigned error in the giving of an instruction.

Defendant's first appeal point is a complaint that "The trial court committed prejudicial error in permitting counsel for plaintiff, over defendant's objections that such evidence was irrevelant and immaterial, to cross-examine defendant concerning alleged acts of operating his automobile at high speeds on dates prior to the accident in question." Although defendant speaks of "objections", only one objection was interposed by defendant's counsel in the entire course of defendant's cross-examination by plaintiff's counsel and was directed to the question, "Well, the fastest speed you had ever driven it was over a hundred miles an hour, wasn't it?". Defendant's counsel interposed objection as follows: "If the Court please, I am going to object to this as being irrelevant and immaterial to any issues in this case." The court overruled the objection. Plaintiff's counsel rephrased the question in slightly different form, asking: "You had personally driven it over a hundred miles an hour, had you not?" Without further objection, defendant answered, "More than likely at sometime or other." Defendant's counsel made no motion to strike the answer or instruct the jury to disregard it. Although the point proper complains only of prejudicial error in the admission of evidence that was "irrelevant and immaterial", the thrust of defendant's argument of the point is to the effect that the admission by defendant that "More than likely" he had driven the automobile more than a hundred miles an hour was prejudicial and inflammatory in that it was calculated to poison the minds of the jurors and prejudice them against defendant.

The instant point has not been preserved for review, being founded only upon the *general* objection that the testimony sought was "irrelevant and immaterial". A long line of Missouri decisions has uniformly held that an objection to evidence on the formal ground that it was "irrelevant, incompetent and immaterial", cannot be considered on appeal. See 2A Mo.Digest, Appeal and Error, ☜231(2), 232(2). As stated by Judge Hollingsworth in Hoffman v. St. Louis Public Service Co., Mo.Sup., 255 S.W. 2d 736, 742, "a mere description of testimony as 'inflammatory', 'prejudicial', 'self-serving', 'inadmissible', is generally construed as being merely epithetical in nature

and insufficient to present anything for review. * * * (citing cases) * * *. It is well settled that an objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else the trial court will not be convicted of error for overruling it. Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539." In Thomas v. Wade, Mo., 361 S.W.2d 671, the Supreme Court held that "a trial court is not to be convicted of error in the admission of evidence for reasons not presented to it at the time." The reason for such rule is well stated in Galloway v. Galloway, Mo.Sup., 169 S.W.2d 883, as here quoted: "In the making of objections the trial judge should be apprised of the grounds upon which objections are based that he may rule with intelligent fairness—opposing counsel should be likewise apprised, for, should the grounds specified be deemed valid ones, counsel may then avail of other, but proper, means of adducing the proof." Further admonition that specific objections must be made *during trial* is found in Henson v. Pascola Stave Co., 190 Mo.App. 471, 177 S.W. 787, (quoted with approval in Browning v. City of St. Louis, Mo.App., 384 S.W.2d 868) where the court stated: "The objection was that the proper foundation was not laid; that it called for a conclusion; and that it was wholly immaterial and incompetent. Such objections are too general to reach the point now contended for by appellant. * * * Litigants should not be allowed to make objections of this character, and then urge here points which might have been met in the trial court had the objection been more specific." Also see O'Neill v. Kansas City, 178 Mo. 91, loc. cit. 100, 77 S.W. 64, 66, wherein the court said: "When an objection is made to a question propounded to a witness, it should be sufficiently specific to inform the court and opposing counsel of the real point in the objection."

The case of Luechtefeld v. Marglous, Mo.App., 151 S.W.2d 710, has sig-nificant bearing on the point at hand. There, as here, the appellant complained that the trial court erred in permitting opposing counsel to cross-examine him relative to certain matters, over the *general* objection that the evidence was "incompetent because not relative to the issues." The appellant urged for the first time upon appeal that the evidence admitted "was calculated to prejudice and poison the minds of the jurors." Declining to rule the question, the court said, "We cannot consider this last point since it was not made the basis of the objection at the trial. * * * Irrelevant testimony is excluded because such evidence tends to draw the minds of the jurors away from the point at issue and misleads them, and not because such evidence tends to poison and inflame the minds of the jurors and creates bias against the party objecting. When plaintiff's attorney objected to the evidence on the ground of irrelevancy, he must have been presumed to have urged it as a ground of objection, as it is ordinarily understood in the trial of cases. To hold otherwise would be unfair to the trial court." We are mindful that the general rule requiring specificity in objections is subject to the modification that the claimed error of admitting the evidence may be considered in the absence of specific objection "when it is apparent that the evidence is self-evidently wholly incompetent for any purpose or it is obviously unjustly inflammatory and prejudicial and can serve no purpose whatever in the case." Hoffman v. St. Louis Public Service Co., Mo.Sup., 255 S.W.2d 736. In our opinion neither of those two reasons exists so as to require that we abandon the general rule.

Defendant urges that the issue raised in his first point is clearly ruled in his favor by Taylor v. Schneider, Mo.App., 370 S.W.2d 725, where the admission of evidence that defendant had previously driven his automobile at a maximum speed of 108 m. p. h. was held prejudicially erroneous. We do not regard that case as determinative of the issue. In the first

place, the case was not involved with any issue as to speed, whereas, in this case, excessive speed was the *only* issue bearing on the question of defendant's liability. Furthermore, it is apparent from the text of the Taylor opinion, and we consequently assume, *that during trial the complaining party made specific objection upon the ground advanced on appeal* "complying with Rule 79.01 V.A.M.R. as to definiteness". Concluding discussion of the point, we observe that the admissibility of questionable evidence is considered to be a matter within the sound discretion of the trial court. Cardello v. Bauer, Mo.App., 433 S.W.2d 81. And, even if the evidence complained of in this case be considered immaterial, and its admission erroneous, under the circumstances shown it should not be held as materially affecting the merits, and so prejudicial to defendant, as to be reversibly erroneous. It is not likely that the testimony in question had any effect upon the jury's determination, in view of the overwhelming weight of plaintiff's evidence, undisputed by any testimony offered on defendant's behalf, to the effect that defendant was operating his vehicle combination at a high and dangerously excessive speed under the circumstances involved. See Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353 and Reed v. Coleman, Mo.App., 167 S.W.2d 125.

Defendant's Point II reads as follows: "The trial court committed prejudicial error in refusing to discharge the jury, upon defendant's timely motion to discharge the jury, by reason of the argument of plaintiff's counsel which was designed to encourage the jury to base its verdict upon the supposed ability of defendant's insurer to pay a judgment and upon its supposed policy limits, rather than on the nature and extent of plaintiff's injuries." The foregoing is not an assignment of error in conformity with Rule 83.05(e), V.A.M.R. because it does not briefly and concisely state the particular action or ruling of the trial court claimed to be erroneous. Although the point directs complaint against the court's refusal to discharge the jury " * * * by reason of the argument of plaintiff's counsel * * * ", it does not identify or point out any specific argument which prompted and underlay defendant's motion for a mistrial. The point speaks only of argument which was "designed" to effect a purpose defendant deemed contrary to his interest, in language of such vague and general nature that it gives no indication of what plaintiff's counsel may have said. Rule 83.05(e) contemplates particularization of assignments and is not satisfied by discussion and reference to the argument portion of the brief because an appellate court has no duty to sieve through the entire brief. State ex rel. State Highway Commission v. Warner, Mo.App., 361 S.W.2d 159. Compliance with Rule 83.05(e) required that the point set out, in specific language, the statement by plaintiff's counsel that defendant considered prejudicial to him. Hays v. Proctor, Mo.App., 404 S.W.2d 756. However, in our discretion we waive the insufficiency of the point and proceed to rule it.

As background for discussion of Point II, which imputes to plaintiff's counsel improper reference to insurance coverage, it should be noted that the subject of liability insurance was first (and thoroughly) injected into the case by defendant. Upon voir dire his counsel made full disclosure of the fact that defendant was carrying liability insurance, informed the jury that the Farm Bureau had employed him to defend the case, and admonished that a policyholder "would have a financial interest in this lawsuit". Such was counsel's privilege, if he chose to exercise it, subject to the hazards thereby risked.[1]

1. See Mavrakos v. Mavrakos Candy Company, 359 Mo. 649, 223 S.W.2d 383, where defense counsel stated, "I do represent an insurance company" and plaintiff challenged the statement's propriety. Ruling the question the court said: "We

In his opening statement defense counsel informed the jury that Farm Bureau Insurance Company had paid plaintiff "not only for the damages to the truck ($1,300.-00) but they also paid for the down time of that truck, a total of $733.00." Then, in cross-examining plaintiff, defense counsel brought out the fact in evidence that there was $5,000.00 "total coverage" to be "split up" between plaintiff and Ingram (obviously referring to property damages and "down time" indemnity); that "the (insurance) company at all times was willing to pay the entire amount of $5,000.00 to be split up between you (plaintiff) and Mr. Ingram as you two might agree" also the fact that "Mr. Cooper's insurance company had paid plaintiff for his loss of wages."

In closing argument defense counsel again told the jury that Farm Bureau had hired him to represent the defendant, and stated, "Now, Mr. Cooper is my client, just like he took the money out of his own pocket and paid me to come over here and defend him in this case." Continuing his argument, counsel also stated, "I am not embarrassed to tell you there is an insurance company involved in the case", and again reminded the jury that plaintiff had been paid by Farm Bureau for his loss other than occasioned by bodily injury.

It is apparent that long before closing argument by plaintiff's counsel, the jury shared full knowledge, along with the parties themselves, that the defendant was protected by Farm Bureau insurance from liability for plaintiff's personal injuries, and, to the extent of $5,000.00, for property damage to his truck and loss of its use, all as a result of defendant's voluntary disclosures. The only basic fact withheld from the jury relative to the "insurance"

situation was the amount of coverage available to pay a judgment for plaintiff's personal injuries, the trial court having denied an offer of proof on behalf of plaintiff to show, by Farm Bureau's adjuster, the total limits of the policy.

We have "sieved" the record carefully and taken note of all objections directed against defense counsel's argument to the jury—in number, a total of four. In each instance the trial court sustained the objection. In each instance, when requested, the court instructed the jury to disregard the remark objected to. Only in one instance did defendant's counsel seek additional relief by moving for discharge of the jury. During closing argument, plaintiff's counsel stated: "He (meaning defense counsel) says, 'I am not ashamed to admit, in effect, that this insurance company, and I am the insurance attorney, come in here and admit we have an interest in this.' How much of an interest have they? Did he tell you that?" Defense counsel objected to that statement on the ground it was irrelevant and immaterial and requested the jury be instructed to disregard it, but did not move for discharge of the jury. The objection was sustained and the jury was instructed as requested.

Proceeding with his argument, plaintiff's counsel's next remark was "You just bring me in the verdict, ladies and gentlemen, and you let me worry about whose pocket I collect it out of. Don't worry about the pocket." This remark brought forth defense counsel's objection to it as immaterial and prejudicial, and a request that the jury be instructed to disregard the statement and (for the first and only time) a further request that the jury be discharged. The trial court sustained the objection, instructed the jury as re-

do not agree with plaintiff's contention that Mr. Hartman had no right, if he chose to do so, to make that statement to the jury. * * While counsel, who, in fact, are representing an insurance carrier in a personal injury

action before a jury generally do not do so, yet under these circumstances, they may make such fact known to the jury if they desire to incur the risk thereby involved."

quested, but denied the request for discharge of the jury.

 Defendant urges here that the last quoted statement, (the "pocket" argument which evoked the motion for a mistrial), was an appeal to the jury to base its verdict upon "defendant's supposed policy limits" which had the effect of improperly telling the jury there was total insurance coverage of $15,000.00. So contending, defendant finds it necessary to rely upon other segments of argument by plaintiff's counsel made *without objection,* primarily his requests of the jury to return a plaintiff's verdict for $15,000.00. In his opening argument plaintiff's counsel had stated, *without objection,* "I want a verdict in this case for my client and I want it in the sum of $15,000.00. I don't want it over $15,000.00. I just want the verdict at $15,000.00. Now, this is my opinion as to the value of my client's case." In closing argument plaintiff's counsel, *also without objection,* repeated the request in this language: "I ask you to return a fair and an adequate verdict, and I feel that verdict should be in the range of the $15,000.00 I mentioned previously, not over that, but bring me in that fair and reasonable and adequate amount and make it something that you can be proud of." We do not ascribe any impropriety to those remarks, nor do we deem that they necessarily had the effect of informing the jury of the policy limits. Counsel for plaintiff was entitled to argue the value of his client's case—a privilege that defense counsel also exercised by telling the jury in his closing argument that "I think a fair verdict in this case would be probably $750.00 to $1,000.00 above his out of pocket expense * *." As this court held in Lynch v. Rosenthal, Mo.App., 396 S.W.2d 272, ruling the identical question considered in this case, "Counsel was merely exercising the privilege of an advocate to indulge in the natural art of persuasion." In any event, considering that the verdict returned was in the lesser sum of $10,000.00, it is not a reasonable conclusion that the jury based its award upon any "supposed" policy limits of greater amount.

We rule that the trial court did not err in refusing to discharge the jury for the reason assigned.

 In defendant's remaining point he complains the verdict is excessive and charges the trial court with error in refusing to order a remittitur. The question thus presented is not susceptible of determination by any precise formula or with mathematical nicety, but must be ruled in accordance with the particular facts of this case. Factors bearing on the question include: the nature and extent of plaintiff's injuries; whether or not his injuries are permanent; plaintiff's age; the size of verdicts rendered in other cases involving similar injuries; changing economic factors and the significant decline of the dollar's value. Also to be considered is the fact that the jury and the trial court had superior opportunity to make personal appraisal of plaintiff's injuries and thus were in better position than this court to measure a reasonable award of damages. 10 Mo.Digest, Damages, ☞127. Furthermore it is a well established rule that the assessment of damages for personal injuries is primarily the function of the jury, that its discretion is conclusive unless the amount is clearly excessive, and that an appellate court should not interfere unless the claimed injustice of the verdict amount is manifest. Breland v. Gulf M. & O. R. Co., Mo.Sup., 325 S.W.2d 9.

The following is our review of the evidence pertaining to the nature and extent of plaintiff's injuries, stated in the light most favorable to plaintiff. Hart v. City of Butler, Mo.Sup., 393 S.W.2d 568.

Prior to the accident involved, plaintiff was in good physical condition, and had no history of neck or back trouble. The force of the horse trailer's impact with plaintiff's truck was so severe that it knocked the truck backward. Plaintiff became dizzy and his neck and shoulder be-

450

gan hurting him within a half hour after the wreck. He developed severe throbbing headaches and pain in his neck and shoulder which persisted for two months. During that time he was off work and was under regular care of a physician, Dr. Long, who treated him three times a week with diathermy and medication. Thereafter his pains diminished, but when he went back to work their severity resumed and he has not been able to work steadily. When he undertakes to "do anything" he experiences "real severe throbing headache" and sharp pain just below the skull and in his neck, left arm and shoulder. Operating a truck brings on those pains, and when he drives his truck over bumpy farm fields, as his occupation requires him to do, the "jogging me around makes it hurt worse". After plaintiff's attempted resumption of his work and the recurrence of his severe pain, he consulted another physician, Dr. William Haynie, who diagnosed his condition to be the result of muscle spasm—a tightening or knotting up of the muscles in the cervical area. Dr. Haynie treated him regularly three times a week, by administering microtherm physiotherapy and medication, in an attempt to relieve the muscle spasm and reduce the nerve compression which caused the pain. At the time of the trial, plaintiff was still under Dr. Haynie's care and was being treated regularly approximately twice a week. His pain still persisted.

Dr. Haynie testified that x-rays showed no fracture, but that plaintiff had developed muscle spasm, which, he stated, pulls the skeletal joint spaces together, thereby pinching the nerves and causing pain. The doctor's described treatment was administered to relieve the muscle spasticity and thereby decompress the nerves affected. Dr. Haynie stated that when injury to the neck or back lasts longer than three months (as had plaintiff's) "we consider them permanent". He explained: "Eventually the ligaments become irritated and, like I say, this constant muscle spasm and irritation, which eventually calcify, then you can see the arthritic spur, bone calcification. The spur is an outgrowth of the bone or ligament that you can see on x-ray." Dr. Haynie testified that in his opinion plaintiff's complaints were not "psychological" but were justified, that plaintiff would require medical attention in the years to come because of his injuries, that the type of plaintiff's occupation would further aggravate his injuries, and that he would probably have back trouble "off and on for the rest of his life."

The foregoing facts constitute a sufficient evidentiary basis from which the jury could reasonably find and believe that plaintiff sustained permanent injuries which had caused him to suffer severe pain from the date of their sustention to the date of trial, and would continue to cause him pain and suffering for the rest of his life—an expectancy of 43.99 years. As a reviewing court we are unwilling to say that the jury's award of $10,000.00 for such injuries is clearly excessive or that it is manifestly unjust. Nor, from the standpoint of the doctrine of uniformity of verdicts for similar injuries do we find reason to consider the verdict excessive. After due consideration of cases cited by both parties and examined in the course of our independent research, we are convinced that the verdict is reasonably commensurate with verdicts rendered in other cases involving comparable injuries. Consequently, we rule that the trial court did not err in refusing to require a remittitur.

The judgment is affirmed.

All concur.

PRITCHARD, J., not participating because not member of the court at time the cause was submitted.