**Joseph GANT, a minor, et al.,**
**Plaintiff-Appellant,**

v.

**Claude HANKS, Defendant-Respondent.**

**No. 42045.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 10, 1981.

Hullverson, Hullverson & Frank, Inc., Thomas C. Hullverson, Stephen H. Ringkamp, St. Louis, for plaintiff-appellant.

Godfrey, Vandover & Burns, Inc., James E. Godfrey, Robert D. Andrekanic, St. Louis, for defendant-respondent.

GUNN, Judge.

While caddying for defendant Hanks, plaintiff was struck in the head by a golf ball hit by Hanks. Jury verdict was for Hanks and plaintiff appeals alleging certain instructional error and the admission of certain testimony deemed irrelevant. We affirm.

On the day of the accident, plaintiff was thirteen years of age. He had been assigned to caddy for Hanks at the Forest Hills Golf and Country Club in St. Louis County, and, incidentally, it was his first day of caddying at Forest Hills. On the first tee, plaintiff positioned himself behind a long hedgerow nearly fifty yards in length to the left of the tee which served as a cover from any golf balls hit to the left, thusly:

Hanks' first shot was sliced to the right out of bounds. At his golf partners' urging, and with some discomfiture at his golfing skill demonstration, he took a second shot from the tee.[1] The second shot was hit sharply on a line to the left, striking plaintiff in the temple as he peered around the hedge to follow the flight of the ball. Hanks had neither seen plaintiff at the time of his second shot nor that the errant golf ball had struck his caddy. After assuring the golfers that he was no more than temporarily stunned and frightened, plaintiff continued to caddy. But at the sixth hole, Hanks observed him wandering aimlessly around the golf course. Plaintiff was taken

---

1. Commonly denominated in golf parlance as a "Mulligan".

home and then to a hospital where immediate surgery was performed to remove a blood clot from his brain. Plaintiff's evidence was that he suffered severe, permanent mental and physical impairment, including epilepsy, as a result of the injury.

Suit was brought against Forest Hills and Hanks with a jury verdict in favor of plaintiff against Forest Hills for $175,000. The jury found the issues in favor of Hanks. Plaintiff has appealed the verdict in favor of Hanks.

Plaintiff's first complaint relates to the instructional error. Instruction No. 9, which was defendant Hanks' contributory negligence instruction and which mirrored Forest Hills' contributory negligence instruction, provides:

### INSTRUCTION NO. 9

Your verdict must be for defendant Claude Hanks if you believe:

First, plaintiff placed himself in a position where he could be struck by a golf ball, and

Second, such position was dangerous to anyone occupying it, and

Third, plaintiff knew or by the exercise of ordinary care should have known and appreciated such danger, and

Fourth, plaintiff was thereby negligent, and

Fifth, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

Instruction Nos. 10 and 11 provide definitions for the term "negligence" as follows:

### INSTRUCTION NUMBER 10

The term "negligent" or "negligence" as used in these instructions with respect to plaintiff Joseph Gant means the failure to use the degree of care which an ordinarily prudent boy of the same age, capacity and experience would use under the same or similar circumstances.

### INSTRUCTION NUMBER 11

The term "negligent" or "negligence" as used in these instructions with respect to defendants Hanks and Forest Hills Golf and Country Club means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Plaintiff's counsel in a fine brief to this court notes that paragraph third of Instruction No. 9—the contributory negligence instruction—refers to "the exercise of ordinary care" by the plaintiff. Yet, nowhere is the term "ordinary care" defined with respect to the minor plaintiff, an error alleged to be exacerbated by Instruction Numbers 10 and 11, inasmuch as the only definition of "ordinary care" which was submitted to the jury provided the reasonable person standard applicable only to adults. *Dorrin v. Union Electric Co.*, 581 S.W.2d 852, 856–57 (Mo.App.1979), and *Carter v. Boys' Club of Greater Kansas City*, 552 S.W.2d 327, 332 (Mo.App.1977), amply support plaintiff's position in this regard. Further, the Notes on Use (1977 revision) to MAI 11.02 and 11.05 mandate the definition of "negligent" or "negligence" and "ordinary care" when these terms are used.

No doubt, failure to define "ordinary care" as used in defendant's contributory negligence instruction with respect to the minor plaintiff constituted error. In addition, the contributory negligence instruction gave the jury an overly broad area in which to find plaintiff negligent. We must determine, however, the prejudicial effect of the error in deciding whether the case must be reversed as a result. *Davis v. Moore*, 601 S.W.2d 316, 320 (Mo.App.1980); *Salsberry v. Archibald Plumbing & Heating Co.*, 587 S.W.2d 907, 916 (Mo.App.1979); Rule 70.-02(c) Mo.R.Civ.P.

Plaintiff also complains of paragraph first of Instruction No. 9 as an improper roving commission in allowing the jury to find for Hanks if "plaintiff placed himself in a position where he *could* be struck by a golf ball ..." (emphasis added). And, in-

deed, the foregoing language would permit the jury to find plaintiff contributorily negligent if he were hit by a golf ball no matter where he positioned himself, for the fact is that he was where he *could be* struck by a golf ball. As plaintiff properly argues, the standard of care owed for one's own safety relates to whether there was a "reasonably foreseeable risk of harm", not whether one "could be injured" in a given situation. *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, 580 (Mo. banc 1978); *Gorman v. St. Louis-San Francisco Railroad Co.*, 427 S.W.2d 390, 393 (Mo.1968).

Defendant Hanks' counsel concedes that plaintiff correctly exposes the errors of the instruction for the reasons stated. But, in response queries: what is the prejudicial effect? After all—so he adjures—with the same instruction to deal with and overcome with regard to Forest Hills, plaintiff was successful in his bid for damages to the sum of $175,000.[2] We are constrained to agree with defendant Hanks in this regard.

In spite of plaintiff's well offered protestations, *Robbins v. Robbins*, 328 S.W.2d 552, 556 (Mo.1959), and *Cary v. Bell*, 545 S.W.2d 400, 401 (Mo.App.1976), fully support Hanks' position that, since plaintiff obtained a substantial jury verdict in his favor[3] on the issue of liability, error regarding the contributory negligence instruction was harmless in this case. In *Robbins*—a personal injury case—the jury found in favor of plaintiff against one defendant but in favor of a co-defendant. The Supreme Court disposed of challenged error to defendants' contributory negligence instruction by stating:

> The only possible construction of its [the jury's] verdict is that it found that plaintiff was not contributorily negligent; otherwise it would have not found for him against either defendant. Under these circumstances the instruction could

not have constituted prejudicial error and we need not consider the specific objections.

*Id.* at 556.

■ *Cary v. Bell* is in accord with *Robbins*. It holds that when a verdict is returned in favor of the plaintiff against one of two co-defendants with the contributory negligence issue raised by instruction, the jury has necessarily found the plaintiff not guilty of contributory negligence; hence, any error in the contributory negligence instructions relating to both defendants is harmless. There is no significance—as urged by plaintiff—that *Robbins* and *Cary* involve a single contributory negligence instruction applicable to both defendants, whereas in this case there were two such instructions, one for each of the two defendants. The instructions were identical. The fact is that plaintiff was not required under the instruction to have any different standard of care for either defendant. And by rendering a verdict in plaintiff's favor against Forest Hills under the same form of instruction as given by Hanks, the jury necessarily found plaintiff free from contributory negligence. Thus, the instructions—erroneous as they may have been—resulted in no prejudice to plaintiff. *Robbins v. Robbins; Cary v. Bell.* Not every error concerning instructions is prejudicial, requiring reversal. In this situation, there was but harmless error and insufficient ground for reversal. *Davis v. Moore*, 601 S.W.2d at 320; *Doyle v. St. Louis-San Francisco Railway Co.*, 571 S.W.2d 717, 724 (Mo. App.1978).

■ Plaintiff's final contention of error relates to the testimony of defendant Hanks alleged to have been given for the sole, improper purpose of showing an irrelevant and immaterial "humanitarian concern" on his part for plaintiff's welfare thereby softening the jury's attitude to-

---

**2.** The damages issue appears to have been finally determined by the jurors at $175,000. No suggestion has been made that even a reversal as to Hanks would increase the dollar amount to which plaintiff had been entitled. *See Scheibel v. Hillis*, 570 S.W.2d 724 (Mo.App.1978), and *Liberty v. J. A. Tobin Construction Co.*, 512

S.W.2d 886 (Mo.App.1978), holding that there can be only one judgment against joint tortfeasors.

**3.** Plaintiff does not challenge the adequacy of the verdict.

ward him. Over objection, in a series of seven brief questions and answers, Hanks was permitted to testify that after discovering that the plaintiff had been taken to the hospital, he drove there himself, talked to plaintiff's parents and sister and remained at the hospital until the plaintiff came out of surgery.[4] We agree with plaintiff that Hanks' post-incident conduct scarcely seems calculated to focus the jury's attention on the prime issues presented for its consideration. But there is more than a modicum of merit to Hanks' response that the objection has preserved nothing for judicial review. *See e. g. McIlroy v. Hamilton*, 539 S.W.2d 669 (Mo.App.1976) (holding that an objection that testimony is incompetent, irrelevant and immaterial is too general to preserve the issue of admissibility for appellate review); and *Bly v. Skaggs Drug Centers, Inc.*, 562 S.W.2d 723 (Mo.App.1978) (holding that an imprecise objection to evidence will not serve as a basis for reversible error). It appears that plaintiff's objection that "I'll have to object because it [the testimony] has nothing to do with any of the issues in this law suit" is insufficiently specific for appellate review.

 But, in any event, the trial court is vested with substantial discretion in controlling and ruling on the admissibility of evidence. *Compton v. Williams Bros. Pipeline Co.*, 499 S.W.2d 795 (Mo.1973); *Lawson v. Cooper*, 475 S.W.2d 442 (Mo.App.1972). And while the relevancy of the brief line of inquiry of Hanks does seem questionable, we do not deem it so inflammatory or prejudicial as to amount to an abuse of trial court's discretion in allowing it or that it

requires reversal of the case. *Lawson v. Cooper*, 475 S.W.2d at 446, 447.

Judgment affirmed.

PUDLOWSKI, P. J., and WEIER, J., concur.

4. Hanks' testimony in this regard is as follows:
 Q. [Hanks' attorney] Did you ask what hospital he'd been taken to?
 A. [Hanks] Well, he told me St. John's Mercy.
 Q. What, if anything, did you do?
 A. I got in my car and drove to St. John's.
 Q. What time did you arrive at St. John's?
 MR. HULLVERSON: Objection—if the court please, from this point on, I'll have to object because it has nothing to do with any of the issues in this lawsuit.
 THE COURT: Objection overruled.
 *(MR. GODFREY Continuing):*

 Q. Was it in the afternoon?
 A. It was in the afternoon.
 Q. Did you talk to Joseph's mother and father?
 A. Yes, I did, and his sister, I think, too.
 Q. And how long did you remain at the hospital?
 A. Until he came out of surgery.
 Q. How long was that?
 A. It seems like to me he came out of surgery around 6:00—I'm not exactly sure, but I was outside the operating room when Dr. Lattinville came out.