**NEENAN COMPANY, Respondent,**

v.

**TIP-TOP PLUMBING & HEATING COMPANY, Appellant.**

No. 24885.

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

**336**

Herbert Horowitz and Harry Weed, Kansas City, for appellant.

Edward F. Aylward, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is a suit by respondent Neenan Company to recover the amount due as payment for certain copper pipe and tubing ordered by appellant and allegedly delivered by respondent, for which payment had not been made. Respondent recovered judgment in the trial court in the amount of $2,577.17, plus interest. Appellant has duly appealed to this court contending primarily that there is not sufficient evidence to show delivery of the merchandise in question. We shall refer to the parties by name or as they appeared below.

Neenan Company is a wholesale supplier of plumbing supplies and Tip-Top Plumbing & Heating Company is a company performing plumbing work. In the year 1965, Tip-Top bought a large amount of plumbing supplies from Neenan. For the months of February, 1965 to and including December, 1965, Neenan billed Tip-Top in the gross amount of approximately $75,000.00 for supplies purchased. These bills contained charges from more than 100 different invoices. There was a continuous course of business between these two parties during the year. The controversy involved in this case concerns a large order for copper pipe and tubing placed by Tip-Top with Neenan in June, 1965. The price for this order was well over $30,000.00. It was described by Neenan's salesman as being a "truckload order" but there is no evidence as to what items made up the order and it is not otherwise directly described.

Neenan in turn ordered the copper pipe and tubing from Cerro Copper & Brass Company at Monsanto, Illinois. It appears that at least part of this order was delivered by Cerro to Tip-Top by two different trucks, the shipping date for the first truck being shown on Neenan's invoices as August 19, 1965 (Exhibits 20 and 21), and the shipping date for the second truck being shown on Cerro's bills of lading as August 20, 1965 (Exhibits 1 and 2).

Exhibits 20 and 21 are Cerro's customer packing list covering the merchandise shipped August 19. These two exhibits appear to be two pages of one document covering this shipment which was carried by Strickland Truck Line. These two exhibits show 32 items printed thereon. This truck did not contain all of the items printed on the customer packing list and as the truck was unloaded, the items delivered were marked and the items not on the truck were shown as still due on back order. Twenty-one of the 32 items printed on the packing list were actually delivered by this truck. Exhibit 20 consists of one sheet of the packing list and Neenan's Invoice No. 2891: This invoice lists every item shown on the sheet of the packing list to which it is attached but no prices are shown for the items not delivered. A dash

is shown in the place where such price would normally appear and the letters "BO" appear opposite the items not delivered. In similar fashion, Exhibit 21 consists of one sheet of the packing list plus Neenan's Invoice No. 3577. Again, the items not delivered are shown as back ordered and no price for such items is included in the invoice.

Exhibits 1 and 2 are bills of lading covering shipment by Cerro's own truck which departed from Cerro's yard in Monsanto, Illinois on August 20, 1965. One bill of lading (Exhibit 2) shows 6,360 pounds consigned to Tip-Top, and the other (Exhibit 1) shows 27,528 pounds consigned to Neenan. The truck driver testified that the shipment for Tip-Top was delivered to Tip-Top and the delivery thereof receipted by an employee of Tip-Top in his presence. The contents of this shipment is not further identified except that the truck driver did remember that it contained some soft copper tubing, among other things. He was unable to specifically designate or describe any particular item in this shipment.

The two invoices covering the items delivered by the first truck are dated August 25, 1965. Thereafter, on August 27, 1965, Neenan's Invoice No. 5588 (Exhibit 18) and its Invoice No. 5555 (Exhibit 16) were prepared. Invoice No. 5588 consists of the four items not priced but shown as back ordered on its Invoice No. 2891 (Exhibit 20). Neenan's Invoice No. 5555 lists all seven items shown as not delivered and back ordered on its Invoice No. 3577 (Exhibit 21). However, only two of these seven items are charged for on Invoice No. 5555. The prices for the other items on the invoices are not extended and there is no charge therefor.

These four invoices, Nos. 2891, 3577, 5555, and 5588, were included along with others with which we are not concerned on Neenan's statement dated September 1, 1965. The total amount of this bill was paid by Tip-Top. Thereafter, when Tip-Top received its billing from Neenan on October 1, 1965, it deducted from the total amount of the October bill the amount of $2,775.73 which represented the total charges shown for Invoice Nos. 5555 and 5588. In other words, Tip-Top deducted the amount of the two invoices covering items not delivered by the first truck and shown as back orders on Neenan's invoices covering the deliveries made by the first truck. Tip-Top claimed that they had not received delivery of these items.

When this deduction was made by Tip-Top, Neenan's salesman, Mr. Lombardino, who had sold this order to Tip-Top, went to Tip-Top's place of business to attempt to get the matter straightened out. He testified that he worked for a week or ten days trying to determine what had happened. It was agreed between Lombardino and Nussbaum for Tip-Top that one item of 30 coils of ¼ K soft (60's) in the amount of $192.78 had, in fact, been received and should be paid for. This item together with the sales tax thereon in the amount of $5.78 was apparently paid by Tip-Top. No further reference is made to this item and this reduces the shortage in payment to $2,577.17, the amount sued for.

As a result of Lombardino's investigation at Tip-Top's place of business, a credit memo and an additional invoice were prepared, both dated October 18, 1965. The credit memo represented the merchandise that Tip-Top claimed it had not received and this was written up on Neenan's Invoice No. 7366. The additional Invoice No. 6258 represented items that had not been billed and which Tip-Top agreed that it had received, according to the testimony of Lombardino.

The credit memo gives credit to Tip-Top for the two items previously charged for on Invoice No. 5555. It also gives credit for three items previously charged for on Invoice No. 5588. The fourth item on this invoice was the one that Nussbaum agreed that he had received and which was apparently paid.

The new Invoice No. 6258 consists of five items which had been back ordered

and not delivered by the first truck, which were itemized on Invoice No. 5555 but which were not priced on that invoice. This new Invoice No. 6258 also lists two items from some source which is not apparent but there are no prices extended for these items and they, therefore, require no further consideration. In its next bill on November 1, 1965, Neenan showed a charge in the amount of the new Invoice No. 6258 and showed a credit in the amount of the credit memo written up on Invoice No. 7366. There is also shown on this billing an additional credit in the amount of $32.33 which apparently comes from some transaction outside of this controversy. This bill also shows a balance forward in the amount of $2,609.50 which is the exact amount of the two credit items. It appears that Tip-Top paid this bill in full and thus paid for the items shown on the new Invoice No. 6258. This leaves in controversy only the items shown on the credit memo in the amount of $2,-577.17. Aside from the items covered by the credit memo, Tip-Top has now paid for each and every item shown on the packing slip for the first truck (Exhibits 20 and 21) whether or not they were delivered by that truck. The bill for December 1, 1965 does not show any balance forward.

■ If these five items were delivered to Tip-Top, then Neenan was entitled to be paid therefor. If the items were not, in fact, delivered, then Neenan is not entitled to payment. There is no evidence that they were delivered. It is apparent that they were not delivered on the first truck, they were shown as being short on the packing list. The only other delivery shown is that by Cerro's own truck which left Monsanto on August 20, 1965. The bill of lading covering the shipment on that truck to Tip-Top shows only that it consisted of 6,360 pounds of copper pipe and tubing. It does not list any item that was on the truck and there is no other document in evidence and no testimony showing whether or not these five items in question were in the shipment delivered by this truck. We cannot infer that these five additional items were on the second truck. We do not know the weight of any of the items and the items making up this shipment were not identified. Consequently, the evidence is not sufficient to show delivery of these items to Tip-Top and therefore the judgment for Neenan is not supported by the evidence and must be reversed. However, it does appear that evidence to identify the items contained on the second truck may be available. Exhibits 3 and 4 were marked for identification. They were described as "delivery tickets" covering the shipment contained in the second truck. They were not offered in evidence and are not before the court. In his opening statement, counsel for Neenan indicated that such tickets would be put in evidence and that they would show items and weights going to make up the 6,360 pound shipment. Therefore, this case should not be reversed outright but should be remanded for a new trial.

■ Defendant Tip-Top contends that regardless of the issue of delivery, it is entitled to judgment because when Lombardino and Nussbaum spent a week or ten days trying to determine what had happened, they determined and agreed that Tip-Top should have a credit for the items shown in the credit memo and that Tip-Top should pay for the items shown in the new invoices; that both of these items were contained in the next billing from Neenan to Tip-Top and paid. Defendant contends that, therefore, under the doctrine of "account stated" the matter is closed and cannot now be reopened. From the evidence before us we might be inclined to agree with this contention if we were free to do so. However, the defense of account stated was not pleaded by Tip-Top, it was not mentioned in the trial of this case, it was not included as a reason why judgment should be for Tip-Top when motion for judgment was made at the close of all of the evidence, and it was not mentioned in the motion for new trial. This issue as to account stated was raised for the first time

in the briefs in this court and constitutes a complete departure from the theory upon which the case was tried in the court below. Therefore, we are not free to consider this contention of defendant. See Berghorn v. Reorganized School District No. 8, 364 Mo. 121, 260 S.W.2d 573, and Union Electric Light & Power Co. v. Surgical Supply Co., 122 Mo.App. 631, 99 S.W. 804.

Defendant also claims error in the manner in which a witness was allowed to refresh his memory and in the admission of evidence. It is not necessary for us to pass on these contentions because they are not likely to arise at the new trial which must be had in this case.

For the reasons heretofore stated, judgment of the trial court is reversed and the cause remanded.

All concur.