**Esther L. ENNENBACH, Respondent,**

v.

**Eugene M. ENNENBACH, Appellant.**

**No. 25921.**

Missouri Court of Appeals,
Kansas City District.

Dec. 4, 1972.

**262**

James Wheeler, Keytesville, Collins & Grimm, Macon, for appellant.

Robert Devoy, Brookfield, for respondent.

Before SHANGLER, C. J., PRITCH-ARD and WASSERSTROM, JJ., and LAURENCE R. SMITH, Special Judge.

LAURENCE R. SMITH, Special Judge.

This is a divorce case in which defendant on appeal challenges the award of alimony to plaintiff wife.

Plaintiff filed for divorce and defendant cross filed for divorce. There was a contested hearing on July 30, 1971 at which both parties and their respective attorneys appeared. However defendant did not testify, nor did he offer any evidence.

By judgment entry of August 25, 1971 the trial court dismissed the defendant's cross-petition, granted plaintiff a divorce and awarded plaintiff "alimony of $15,000 and $250 per month, and attorney fee of $450." Following the filing of a motion for new trial by defendant the court made the following entry on September 24, 1971:

"Decree amended to provide that plaintiff be restored to her maiden name, Ester L. Belfield, and that any amount received by plaintiff since decree of August 25 from joint account in Marceline Home Savings and Loan shall be credited as payment on $15,000.00 gross alimony. Motion for New Trial overruled."

On appeal, defendant contends: (1) the court erred in awarding any alimony; (2) if plaintiff is entitled to any alimony the amounts awarded are grossly excessive; and (3) if the evidence is too meager for this court to make an intelligent decision on the question of alimony, it would be appropriate to remand the case for retrial on the issue of alimony.

The judgment of the trial court should "not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 73.01(d) V.A.M.R.

The granting of alimony to a wife who obtains a divorce is not mandatory. It is discretionary with the Court. Section 452.-080 V.A.M.S. Smith v. Smith, 350 Mo. 104, 164 S.W.2d 921, 923.

Among the factors to be considered in the awarding of alimony are "the financial status of the respective parties, including the question of their individual estates, incomes, obligations and necessities; the contribution of each to the accumulated property; the probable future prospects of each; their respective ages, health and ability to follow gainful occupations; their stations in life; their children, if any; the duration of the marriage, and whether it was one of affection or convenience; and the conduct of the parties, with particular regard to the cause of the divorce and the relative or comparative responsibility of

each other therefor." Simmons v. Simmons, Mo.App., 280 S.W.2d 877, 880.

At the time of trial (July 1971) plaintiff was 42 and defendant was 43. They were married June 5, 1965 and separated January 6, 1970. No children were born of the marriage although plaintiff had two miscarriages. It was the first marriage for plaintiff and the second for defendant.

Plaintiff's grounds for divorce were based upon defendant's absence from the home, his association with other women, his failure to take out the plaintiff, and his indifference towards plaintiff. Although plaintiff left the home, she testifies she would have come back if defendant had tried to make the marriage work.

Defendant is a veterinarian. At the time of the marriage in 1965 he owned a one-half interest in the Green Hills Animal Hospital at Marceline. He had obligated himself in the amount of $15,000 to a Dr. DeWeese for his half interest. He and Dr. DeWeese were the joint owners of a 1957 one-bedroom house trailer. The value of it was not shown.

Defendant's total debts at the time of his marriage (including an indebtedness on the trailer, on a car and on the half interest in the business) were $20,295.

At the time of the marriage plaintiff owned a 1965 Buick for which she had paid $3,300. In addition she brought into the marriage some $2,100 in cash and various household items. Soon after the marriage she acquired $1,251 from insurance, which sum she deposited in their joint account.

In 1969 defendant bought out the other half interest in the animal hospital from a Dr. Thorne for $2,000 in cash and the assumption of a $7,500 note payable to Dr. DeWeese.

Defendant was drawing out $900 per month from the business at the time of the marriage. This had been increased to a draw of $1,000 per month as of the time of the separation of plaintiff and defendant in 1970.

During the marriage plaintiff had no employment for which she received compensation. Federal joint income tax returns showed adjusted gross income as follows:

1965—$13,515
1966—$12,053
1967—$13,716
1968—$13,295
1969—$10,008
1970—$ 6,961

Income tax returns for 1965 through 1968 show the income coming largely from the partnership of Green Hills Animal Hospital. The 1969 return shows $7,015 income from the partnership and $2,558 income from a sole proprietorship, plus some interest income. Gross receipts for defendant for his sole proprietorship in 1969 are shown on Schedule C as $36,563 and gross profit is shown as $26,985.

The Schedule C form for 1970, showing profit or loss from the sole proprietorship, shows gross receipts of $70,487, gross profit of $50,978 and net profit of $6,491. The adjusted gross income of $6,961 shown on the 1970 income tax return is made up of the above stated net profit plus $470 interest.

Plaintiff testified that she offered to work during the marriage but that defendant wouldn't let her. However plaintiff took phone calls for defendant at night for every other week during the weekdays, and on the weekends. Toward the latter part of the marriage plaintiff substituted for others at the animal hospital on Saturday.

At the time of separation in 1970 defendant was the full owner of the animal hospital. He owned no real property. The premises were leased. Included in the assets of the hospital were at least two trucks, accounts receivable which ran from $11,000 to $12,000, medicines, office equipment, air conditioner and furniture. Defendant also still owned a half-interest in the 1957 trailer house, which trailer house was fully paid for.

At the time of separation defendant still owed a total of some $16,300 to $16,800 on two notes for the business. One of the notes calls for monthly payments of $160. One note will be paid off in 1975 and one will be paid off in 1977. Also some $6,040 was owing by defendant and plaintiff on a 1969 truck that is used in the business. Another truck used in the business under a lease-buy arrangement requires monthly payments of $157. Plaintiff testified that these two trucks were owned by defendant. Defendant's total indebtedness at separation was $23,890.

At separation plaintiff and defendant were the owners of a joint account at Marceline Savings and Loan in the amount of $11,125.03. This account is pledged to secure payments for the 1969 truck used in defendant's business.

At the time of separation plaintiff still had her 1965 Buick (titled in the names of plaintiff and defendant), but which wouldn't run. She also had a one-half interest in a house at New Cambria, where she has been living with her parents. Her only other assets were some clothes and a few household items. Defendant has contributed nothing towards plaintiff's support since their separation in January 1970. Plaintiff testified she could not draw from the savings account unless she agreed to certain terms, which she refused to do.

Since her separation the only funds plaintiff has received have been what she could borrow from her father, whose only income is from Social Security. She testified that she was "terribly in debt" to her father; that her father was 77, her mother was 75; and that neither was very well.

At the time of the marriage defendant was paying $110 per month child support and $100 per month alimony to a former wife. His alimony obligation terminated in August 1969 when his former wife remarried. At some time his child support payments ceased. His son graduated from college and his daughter married.

During their marriage plaintiff and defendant lived in the house trailer in Marceline, a few blocks from the animal hospital. Plaintiff described the trailer as "barely livable." When first married plaintiff and defendant had $75 per month for living expenses. After two years the amount available was $150 per month. At the time of separation they had $500 per month for living expenses.

Plaintiff is a high school graduate. She had worked as a bookkeeper for M.F.A. and for the last eight years before her marriage she was employed as a bookkeeper at the Bank of New Cambria for $240 per month ($195 take home).

Plaintiff testified that she has not been able to work since the separation because her "nerves gave way." She saw a Dr. Bohnsack from November 1969 until January 1970 but quit because she didn't have the money. She had seen no doctors since then, except at defendant's request she was examined by a Dr. Smith. She testified that she was still taking nerve pills and tranquilizers.

Plaintiff testified that she felt she should have at least $400 per month for monthly alimony. She stated that she would need to move; that she needed a car; and that she had "hardly any clothes."

The record below leaves considerable to be desired so far as showing the value of properties owned by plaintiff and by defendant and the obligations and living expenses of each. However defendant did not choose to testify nor to offer any evidence in the trial court. And this may be considered. Gragson v. Gragson, Mo.App., 290 S.W.2d 420, 423; Hill v. Hill, Mo.App., 456 S.W.2d 591.

Section 452.080 V.A.M.S. provides: "Upon a decree of divorce in favor of the wife, the court may, in its discretion, decree alimony in gross or from year to year * * *." Defendant has raised no question on this appeal concerning authority of a court to award both alimony in gross and monthly alimony. Although the aforemen-

tioned statute might be open to interpretation, the Missouri Supreme Court has affirmed an award for both alimony in gross and monthly alimony where the question was not raised. Landreth v. Landreth, Mo., 454 S.W.2d 495.

■ Plaintiff and defendant each have a half-interest in the joint account of $11,125.03 in Marceline Savings and Loan. We believe the trial court's attempted modification of the divorce decree by crediting on the gross alimony award any amount received by plaintiff from the savings account is void for lack of definiteness and certainty on the face of the judgment. Taylor v. Taylor, Mo.App., 367 S.W.2d 58. Also attention is called to Burger v. Burger, Mo.App., 481 S.W.2d 632.

The parties herein only lived together about four and one-half years. However it was plaintiff's first marriage and there was basis for the trial court to have concluded that plaintiff had strong grounds for divorce. There are no children and plaintiff was gainfully employed prior to the marriage. However there was basis for the trial court to have concluded that plaintiff was not in physical condition for present employment, and the evidence shows she was substantially in debt to her father and was in need of a car and clothes.

Plaintiff brought into the marriage some $3,300 plus a new car for which she had paid $3,300. She was helpful to the defendant in saving money and in helping him with his business. Although they had a rather meager place of abode, some $500 per month was available for the two of them for living expenses as of the time they separated.

Plaintiff has received no support money from defendant since January 1970. Her interest in the $11,125.03 savings account is subject to a pledge for the $6,040 indebtedness on a truck that defendant uses in his business.

Although defendant has substantial indebtedness, he is the sole owner of the animal hospital and he is a Doctor of Veterinarian Medicine. His equity in the hospital is in excess of $8,200, based upon acquisition cost of $24,500 less balance due on promissory notes for the business of $16,300. The business had a gross profit of over $50,000 for the last reported year of 1970. He has a draw of $1,000 per month.

Defendant has cited a number of cases in support of his position that no alimony should have been awarded or that the amount was grossly excessive. They furnish little guidance beecause of the big divergence in the facts. However, in each of these cited cases, on the issue of alimony, the appellate court affirmed the lower court.

■ The plaintiff had the burden of proof, but we believe that the trial court was not clearly erroneous in finding that plaintiff was entitled to monthly alimony of $250 per month and some amount as alimony in gross. However the granting of alimony in gross of $15,000, in addition to the monthly alimony, was, under the evidence presented, grossly excessive. We believe there is sufficient probative evidence in the record to enable this court to "give such judgment as * * * (the trial) court ought to have given." V.A.M.R. 83.13(c). A reasonable amount for alimony in gross, in addition to the monthly alimony, is $6,000.

Accordingly, judgment as originally entered on August 25, 1971, as modified (only) by restoration of plaintiff's maiden name of Belfield, is affirmed, except as to the amount of alimony in gross, and original judgment is modified by reducing the alimony in gross to $6,000.

All concur.