Terry D. SMITH, Respondent,

v.

Rodney SAYLES, Appellant.

No. WD 32961.

Missouri Court of Appeals,
Western District.

May 25, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

Walter R. Simpson, Sheridan, Sanders & Simpson, P. C., Kansas City, for appellant.

Clifford A. Cohen, Perlstein & Cohen, Kansas City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant appeals from a judgment for $60,000 actual and $25,000 punitive damages taken by default *nihil dicit* on the petition of the plaintiff for personal injury from the negligent operation of a motor vehicle.

The petition alleged that the plaintiff Smith was a passenger in the car of defendant Sayles at the time that the defendant carelessly operated the vehicle into a parked car. The assignment of negligence was that the defendant drove while intoxicated, failed to keep a proper lookout and drove in a lane occupied by a parked car. The allegations of damage were a cerebral concussion, fracture of the left zygomatic arch, fracture of the left infraorbital rim and other general complaints. Those allegations included also certain hospital and medical expenses as well as lost wages. The separate count for punitive damages assigned, "[i]n addition to the ordinary negligence alleged . . . that the defendant was willfully and deliberately operating his motor vehicle in a highly intoxicated condition and therefore displayed a reckless disregard for the welfare and safety of the plaintiff who was his passenger at the time."

■ The prelude to judgment was a recitation by counsel for the plaintiff of the procedural record of the suit—the proof of service of the petition on the defendant and the default of the party to plead over. The party then proceeded to the proof by four exhibits and the testimony of the plaintiff Smith. The first proof, exhibit 1, was a series of letters between counsel of the plaintiff, a notice of lien by counsel to the defendant, and a copy of correspondence with the putative insurer of the defendant accompanied by a list of special damages, reports and a recommendation for settlement. The purpose of that proof, as the colloquy with the court made evident, was to show the indifference of the insurer to the claim—a consideration altogether irrelevant to either the liability of the defendant or the proof of damages on a cause of action in default. The other purpose of that proof was to put before the court the contents of the various reports as evidence of damage. Those documents included the hospital records for emergency and treatment services, the report of Dr. Dixon who treated the plaintiff, the statements for the charges, and the verification of lost wages, among the others. That exhibit 1, however, was only identified to the court, but never tendered or received, and so in principle, was not before the court as evidence. *Neenan Company v. Tip-Top Plumbing and Heating Company*, 429 S.W.2d 335, 338[1, 2] (Mo.App.1968).

The second proof, exhibit 2, was a copy of the municipal police report of the automotive collision. The exhibit, also, was only marked for identification but never became formal evidence. The purpose of that proof was to establish the intoxication of the defendant as a cause of the collision and as a basis for punitive damages. That exhibit also was not formally received by the court and so in technical terms was not evidence.

The third proof, exhibit 3—the radiological report and picture of eyebone fractures—was received as evidence.

The fourth proof, exhibit 4, was the verification by the employer that the plaintiff lost $173.60 in the interim after the collision.

The plaintiff was then sworn and testified. His narrative was simply that he had gotten off work, was offered a ride by the defendant, he accepted, entered the car, fell asleep, and then was made unconscious after his head hit the dashboard of the car. That was the full recollection of the occurrence. Counsel for the plaintiff intersticed that narrative by the additional comment that the defendant and plaintiff were acquainted. On the day of the occurrence, the defendant had gotten off work at about 5:30 p. m. and was at a bus stop when the defendant offered the ride. Counsel undertook to amplify that *the owner of the parked car* into which the defendant collided his car would testify that the car was legally parked, and as the owner stood in the front yard, "there was a big noise and the car plowed into the back of the other." Counsel then related the substance of what *bystander witness* Gresham would give in testimony were he present: "His statement is that he was washing his car and noticed a vehicle approaching southbound on Indiana, heard a voice yell out, heard the crash and ran over and the driver of the car opened his door, too [sic] a half pint gin bottle out and threw it under the car."

The defendant on appeal contends that this evidence raises the contributory negligence of the plaintiff and so bars recovery. The defendant—for that deduction—refers to the police report exhibit [never formally received] entry that the notice of collision was received by the police at 11 p. m., some five and one-half hours after the plaintiff became an occupant of the car and postulates that during that time the plaintiff became aware that the defendant ingested alcohol but continued as a passenger nevertheless.

The statements of counsel, of course, were gratuitous. They were not given on oath or as a witness and therefore were neither self-verified nor evidence. *Kettler v. Hampton,* 365 S.W.2d 518, 523[11, 12] (Mo.1963). They were not essential to the proof of the cause of action in any event and so were superfluous to the judgment. A default *nihil dicit* admits the traversable allegations of the petition. *Robinson v. Lawson,* 26 Mo. 69, 72 (1857). The default in effect admits the cause of action pleaded. *Sumpter v. J. E. Sieben Construction Company,* 492 S.W.2d 150, 154[14–16] (Mo.App. 1973). The very purpose of the interlocutory judgment procedure of Rule 74.045 [and superseded §§ 511.110 to 511.160] is to preclude a defendant in default from answer or defense to the pleaded right of recovery. *Cornoyer v. Oppermann Drug Co.,* 56 S.W.2d 612, 613[1] (Mo.App.1933). Thus, the defendant may not contend on appeal that the judgment lacked proof of negligence liability nor, once in default to a petition well pleaded, assert a defense no longer timely. A petition in default—other than on a written instrument or judgment which ascertains the demand—admits the *liability* only of the pleaded recovery and not an unliquidated demand. Rule 74.09 [§ 511.140]; *Putney v. DuBois Co.,* 240 Mo. App. 1075, 226 S.W.2d 737, 740[1] (1950). In terms of a negligence petition, the default admits that the defendant failed the duty of care to the plaintiff to operate the motor vehicle in a reasonable manner [in the statement of the petition—neglect to protect against a foreseeable risk of harm to the plaintiff by operation of a motor vehicle while intoxicated, from failure to keep a proper lookout and failure to drive in a proper lane]. In other words, the default admits *injury* to the plaintiff by the violation of a legally-protected interest, but does not admit that harm [*damage*] resulted from that injury. Restatement (Second) of Torts §§ 4 and 7 (1965); *Reckert v. Roco Petroleum Corp.,* 411 S.W.2d 199, 205[7] (Mo.1966). In order to render a default judgment *nihil dicit* still interlocutory into a

final default judgment *nihil dicit*—where the claim is for an unliquidated sum—therefore, there must be proof of damages. Rule 74.10 [§ 511.150]; *Stein v. Rainey*, 315 Mo. 535, 286 S.W. 53, 56[4, 5] (1926).

We assume that the contents of all the exhibits were properly before the court whatever the formal technical deficiency in tender and admission. We determine nevertheless that the $60,000 award for actual damages does not rest on substantial evidence and that there was no evidence at all of culpability for punitive damages.

The proof of damages came from the exhibits and from the testimony of plaintiff Smith. The exhibits show total medical and hospital obligations of $2158.97 and lost wages of $176.60 verified by the written statement of the employer. We assume that the costs of hospital and care were reasonable and necessary, although there was no evidence that the obligations were paid or of their value. *Murphy v. S. S. Kresge Co.*, 205 S.W.2d 252, 256[6] (Mo.App. 1947). That sum, even as an expenditure, would not support a $60,000 award. It is evident that the award for compensatory damages responded to the contention of the petition that the physical injury to the plaintiff caused by the collision was permanent. That was also the sense of the argument made by counsel to the court on the evidence as to headaches from concussion ["we don't know whether he's going to have the headaches once or twice a week for the rest of his life"], the scar disfigurements [Terry's [plaintiff] going to have these scars permanently] and the damage to the eye-bones. The reports in evidence included entries that the plaintiff Smith was diagnosed for fractures of the left zygomatic arch and left infraorbital rim. These reports, other than as interpreted by comments of counsel, do not attempt to predict permanent injury. The unsworn statements of counsel, of course, have no effect as evidence and do not tend to prove that any physical disability the plaintiff suffered

from the collision was permanent. The permanency of injury is a proof which must be shown with reasonable certainty and, as to the future physical conditions of the kind asserted as damages, is a matter of medical opinion. *Harrison v. Weller*, 423 S.W.2d 226, 231[11–14] (Mo.App.1967). The actual damage award for $60,000 subsumes these elements—permanency of injury and future medical necessity [eye repair surgery mentioned by the plaintiff, for instance]—but these were elements of the award not shown by competent evidence. We cannot know, of course, the monetary sum the court allocated to those components of the damages, but they are significant losses—if sustained by evidence and found by the trier of fact. It is error to return damages not supported by evidence. *Johnston v. Owings*, 254 S.W.2d 993, 998[14] (Mo.App. 1952). To allow the $60,000 award for actual damages to stand on the sparse proof would be a manifest injustice. *Lawson v. Cooper*, 475 S.W.2d 442, 450[13] (Mo.App. 1972). That the judgment was by default does not excuse the legal requirement that probative evidence sustain the adjudication of the unliquidated claim for damages. *Riley v. White*, 231 S.W.2d 291, 298[11–12] (Mo.App.1950). Rule 84.14 authorizes the court of appeal to finally dispose of the case and enter the proper judgment—even by a reduction of a trial court award [*Ennenbach v. Ennenbach*, 488 S.W.2d 261, 265[2] (Mo. App.1972)]—unless justice requires otherwise. The record makes evident that the plaintiff has available the evidence to make the proofs the award assumes. We remand the cause for that opportunity.

The trial court enhanced the actual damages award by a $25,000 in punitive damages. A negligence plaintiff may in the same case submit for punitive damages and recover on proof that the conduct of the defendant was with "complete indifference to or conscious disregard for the safety of others." *Sharp v. Robberson*, 495 S.W.2d 394, 399[3] (Mo. banc 1973). The pleaded theory for punitive damages was

that the defendant "deliberately operat[ed] his motor vehicle while in a highly intoxicated condition and therefore displayed a reckless disregard for the welfare and safety of the plaintiff." There was, however, no probative evidence of intoxication, in ordinary or in greater degree.

The tenor in the record of negligent conduct so reprehensible as to warrant the return of punitive damages was the consequence of comments of counsel for the plaintiff, given to the court gratuitously and, once again, without effect as evidence. The police accident report marked as "contributing circumstances" to collision, "drinking" and "driver inattention." Another entry, "use of intoxicants" marked the driver as "obviously drunk." We assume once again that the exhibit, although never received, was proper evidence. That report under "supplementary reports," however, struck out the legend "alcoholic influences" previously entered. There was no competent evidence, however, as to the degree of intoxication nor as to any circumstance to allow the inference that the operation of the vehicle was with that "complete indifference to or conscious disregard for the safety of others" which proves negligent conduct of punitive culpability. *Sharp v. Robberson,* supra, 1.c. 399. Counsel for the plaintiff commented to the court that the evidence showed an obvious disregard for the safety of the passenger when he "invit[ed] him to become a guest in a vehicle while he was drinking gin and obviously unable to control the vehicle." There was no competent evidence the defendant drank gin or could not control the vehicle on that account. Counsel derived that observation from a purported statement given him by witness Gresham that: "[he] heard a voice yell out, heard the crash and ran over and the driver of the car opened his door, too [sic] a half pint gin bottle out and threw it under the car." That, however, was merely a narrative given to the court without the sanction of an oath and so useless as evidence—if for no other reason. The only competent evidence on sobriety or degree of intoxication of the defendant driver was, other than the police report entries, the testimony of the plaintiff, himself. That evidence was elicited by the court:

> The Court: Did I understand that you knew the man, Mr. Sayles?
>
> Plaintiff: Yes, I did.
>
> The Court: When you got into the car, was he drinking at the time?
>
> Plaintiff: Well, I hadn't noticed that he had been drinking.
>
> The Court: Okay. Could you tell he was intoxicated by the way he talked or—
>
> Plaintiff: No.

Thus, the evidence does not raise an inference of conduct not only negligent [which subjects another to an unreasonable risk of bodily harm], but so culpable as to involve a high degree of probability that substantial harm will result. *Sharp v. Robberson,* supra, 1.c. 398; MAI 10.02, Committee's Comment [1981, 3rd series]; Restatement (Second) of Torts § 500 (1965).

The record shows that the plaintiff may have available evidence for a prima facie proof of punitive damages and so we remand the punitive damages component of the petition for retrial.

On remand, the defendant stands as a party against whom an interlocutory judgment of default *nihil dicit* has been rendered. Rule 74.045. The unliquidated damages—actual and punitive—remain to be adjudicated on competent evidence. To make that assessment, either party may demand a jury. Rule 74.10; *Electrolytic Chlorine Co. v. Wallace & Tiernan Co.,* 328 Mo. 782, 41 S.W.2d 1049, 1052[6–8] (1931). The defendant retains the right to be heard to mitigate damages or even to defeat recovery by proof that his conduct did not damage the plaintiff. *Laclede Land & Improvement Co. v. Creason,* 264 Mo. 452, 175 S.W. 55, 57[7] (1915).

The judgment is affirmed in part and reversed in part and is remanded for new trial on the issue of damages only.

All concur.