David DUVALL, Respondent,

v.

James Ray MAXEY, Appellant.

Nos. WD 66986, WD 66987.

Missouri Court of Appeals, Western District.

March 18, 2008.

Karen Bourgeois, Columbia, MO, for appellant.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and JAMES WELSH, JJ.

JAMES M. SMART, JR., Judge.

This is an appeal of a denial of a motion to set aside judgments entered in favor of David Duvall and against James Maxey in two cases. Because we find error in one of the cases in the trial court's failure to base its award of actual and punitive damages on the evidence, we vacate the judgments and remand for a hearing on the actual and punitive damages in that case. In all other respects, the judgments are affirmed.

## I. Background

### A. Case A

Duvall filed a *pro se* petition against Maxey in the Boone County Circuit Court on November 4, 2003, for defamation [Case No. 03CV169049, WD 66987] ("Case A"). Duvall claimed that Maxey had made false criminal allegations against Duvall to the Columbia Police Department. Duvall's petition claimed that Maxey had falsely told police: (1) that Duvall had child pornography on his computer, (2) that Duvall's brother had shown the alleged pornography to Maxey's minor son, (3) that Duvall was growing marijuana in his home, (4) that Duvall was molesting children in the neighborhood, and (5) that Duvall was engaged in the unauthorized practice of law. Duvall claimed that he suffered damages, including mental and emotional damages and the inability to obtain employment, as a result of these false accusations. He requested compensatory damages in an amount exceeding $50,000 and punitive damages in an amount exceeding $150,000. Maxey filed a *pro se* answer, which summarily denied all the allegations and claimed that Duvall was attempting to use the court system improperly to harass Maxey.

After many failed attempts to get discovery from Maxey, including requests for interrogatories and attempts to take Maxey's deposition, the court struck Maxey's answer as a sanction for failure to comply with discovery requests. On June 14, 2004, an interlocutory judgment was entered against Maxey.

### B. Case B

On June 22, 2004, about a week after obtaining an interlocutory judgment based on sanctions in Case A, Duvall filed a second *pro se* petition against Maxey. This one [Case No. 04CV168179, WD 66986] was filed in Monroe County and

brought claims of assault, battery, false imprisonment, and intentional infliction of emotional distress ("Case B"). Later, Duvall added two other counts for malicious prosecution and abuse of process. The assault, battery, and false imprisonment claims related to allegations that Maxey, who it was alleged had offensive "body odor," had confronted Duvall in the post office in Holliday, Missouri, and that he had "offensively touched" Duvall. Duvall further alleged that Maxey then went outside the post office and told Duvall that he (Maxey) would kill Duvall if and when Duvall came out of the post office, thereby imprisoning him in the post office.

The intentional infliction of emotional distress count asserted that Maxey had been harassing Duvall in various ways, such as by making harassing phone calls. The malicious prosecution and abuse of process claims related to allegations that Maxey had obtained an *ex parte* order of protection against Duvall based on supposedly false allegations that Duvall was stalking Maxey's son. Duvall claimed that Maxey had obtained this order to prevent Duvall from testifying in his (Duvall's) brother's criminal case.

In Case B, Duvall requested compensatory damages of $500,000 and punitive damages of $1,500,000. Maxey, who had ceased responding to discovery in Case A, and had thereby suffered a judgment for sanctions in that case, did not file an answer in this case or otherwise respond.

On June 28, 2004, Duvall filed a motion for a change of venue in Case B requesting that the case be moved to Boone County, where Duvall had obtained the interlocutory judgment for sanctions in Case A. The court granted the motion. Both cases were then in Boone County. Duvall, who was *pro se*, then pursued a series of procedural moves. After one change of judge exercised by Duvall, four recusals by other judges, two failed writ applications by Duvall, further attempts at discovery directed at Maxey, and other chaotic procedural moves, the details of which we will spare the reader, the matter finally landed in the lap of a visiting judge, the Honorable Hugh Craig Harvey, who valiantly accepted responsibility for the cases.

Judge Harvey conducted a hearing on March 10, 2006, to take up some of the remaining pending matters. Duvall, still *pro se*, appeared ready to proceed. Maxey did not appear. The status of the matter was that one interlocutory judgment for sanctions had been entered. In Case B, Maxey had never filed an answer. Although Maxey was in default, Duvall had continued to send discovery requests, including requests for admissions. Duvall offered into evidence all the requests for admissions that Maxey had refused to answer in both cases.

The court awarded $50,000 in compensatory damages and $150,000 in punitive damages for Case A, as to which an interlocutory judgment had earlier been entered. The court also entered judgment for Duvall in Case B, awarding $500,000 in compensatory damages and $1,500,000 in punitive damages for Case B. The amounts corresponded exactly to the amounts specified in the pleadings and requested by Duvall.

Less than a month later, on April 7, 2006, after Duvall sought to issue an execution, Maxey filed a motion to set aside the judgments or in the alternative for a new trial. The court held a hearing on May 12, 2006, in which Maxey appeared with counsel and testified that he did not receive service for all of the requests made in the two cases. Maxey claimed that although the court had sent notifications of all relevant matters, they had been sent to an old address where Maxey no longer received mail. Other evidence suggested

that Maxey had received service and had simply chosen not to respond. The court expressly rejected Maxey's claim that he was unaware of the proceedings. The court denied the motion to set aside in both cases. Maxey appeals.

## II. Motion to Set Aside

Maxey's first point argues that the trial court erred in denying his motion to set aside the judgments because Maxey established good cause and a meritorious defense as required by Rule 74.05(d).

■ In Case A, Maxey filed an answer. The court struck his answer for refusal to answer any discovery requests, after which an interlocutory judgment of default for Duvall was entered. This judgment was not a judgment on the merits. Nor was it a true default judgment entered under Rule 74.05, although Duvall had moved under Rule 74.05 for a default judgment. *See Norber v. Marcotte,* 134 S.W.3d 651, 662 (Mo.App.2004) ("A default judgment entered by way of a court-imposed sanction for discovery violations is not a true default judgment."). Rather, it is in actuality a judgment for sanctions entered under Rule 61.01. *See id.*

■ A litigant who has a judgment imposed upon him as a result of sanctions may move under Rule 74.06 to set aside the judgment. If that motion is denied, the party may appeal the judgment itself on the grounds that the judgment for sanctions was an abuse of discretion. *See Anderson v. Arrow Trucking Co.,* 181 S.W.3d 185, 188–89 (Mo.App.2005). Our review of the trial court's sanction then would be limited to a determination of whether the court abused its discretion by an "illogical, arbitrary, and unreasonable" ruling imposing the sanction. *Id.* at 189.

Maxey filed a motion to set aside both judgments under Rule 74.05, although the two judgments were not on the same procedural footing. Maxey now appeals the denial of that motion. Maxey's arguments that he established good cause and a meritorious defense are not applicable to Case A, which was a judgment for sanctions under Rule 61.01. Case A did not involve a true default judgment under Rule 74.05. *See Cotleur v. Danziger,* 870 S.W.2d 234, 236 (Mo. banc 1994). Maxey has not requested that we review the trial court's judgment for sanctions under Rule 61.01 for an abuse of discretion, and we see no indication that there is plain, obvious error warranting plain error review of the judgment in Case A. No claim of error has been preserved as to Case A.

■ Maxey's Point I is thus pertinent only to the judgment in Case B, in which Maxey failed to file an answer. For Maxey to obtain an order setting aside the default judgment in that case, it was incumbent upon Maxey to show good cause for failure to respond and a meritorious defense to the action. Rule 74.05(d). The court expressly rejected Maxey's explanation for not responding to the summons. There was evidence introduced by Duvall indicating that Maxey chose not to respond to the summons, electing instead to adopt a strategy of maneuvering assets to try to avoid collection of any judgment obtained by Duvall. Credibility of a testifying witness is for the trial court to determine. *See In re Marriage of Macomb,* 169 S.W.3d 191, 194 (Mo.App.2005). Maxey did not establish good cause for his failure to file an answer. Therefore, the court did not abuse its discretion in refusing to set aside the default judgment on liability on the basis of what Maxey presented. *See Dozier v. Dozier,* 222 S.W.3d 308, 312 (Mo. App.2007).

## III. Merits of Case A

■ In Maxey's second and third points, Maxey claims there was insufficient evi-

dence to support the judgment in Case A. Maxey claims that judgment should not have been granted because there was insufficient evidence of the elements of defamation. These are efforts to argue the merits of the case. The issue in a judgment for sanctions is simply whether the trial court abused its discretion in issuing the judgment for sanctions. *See Anderson*, 181 S.W.3d at 189. We are unable to review the merits of the case. Points II and III are denied.

### IV. Merits of Case B

Maxey's fourth point suggests that the trial court erred in entering judgment in Case B because Duvall did not prove that any emotional injury was medically diagnosable. Again, Maxey is attempting to argue the merits of the case. Case B was actually a judgment of default under Rule 74.05, not a true trial on the merits. The only appeal in such a case is from the denial of the motion to set aside the default judgment. Making a criticism that a plaintiff did not prove every element of his case is not the same as affirmatively showing a meritorious defense. In addition, the defendant must show not only meritorious defense, but also good cause. Rule 74.05. We have already concluded that the motion to set aside was properly denied. Maxey may not argue the merits of the claim for which plaintiff obtained a default judgment. Point IV is denied.

### V. Awards in Case B

Maxey's last point suggests that the court's assessment of damages in both cases was erroneous. Maxey suggests that no consideration was given to the "relative financial positions of the parties" and that the award resulted in a manifest injustice.

In the argument portion of the brief under this point, Maxey argues that the damage awards, particularly the punitive awards, were based on arbitrary figures put forth by Duvall, and that the court utterly failed to make any meaningful evaluation of whether those figures bore any relation to the injuries suffered or appellant's financial status. Maxey argues that the awards are so excessive as to shock the conscience of the court.

To the extent that Maxey may have failed to preserve allegations of error with regard to the awards in Case B, we may grant review under Rule 84.13 for plain error affecting substantial rights. Rule 84.13(c) states that

> Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

We note that on the face of things, there are substantial grounds for believing that error was obvious, and that a manifest injustice or a miscarriage of justice has occurred. *See Smith v. Sayles*, 637 S.W.2d 714, 718 (Mo.App.1982) (manifest injustice to allow damage award in default case "to stand on sparse proof"); *see also Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 723–24 (Mo.App.2004); *see also Millington v. Masters*, 96 S.W.3d 822, 829–32 (Mo.App.2002).

Our concerns as to plain error do not run to Case A, which involved a judgment for sanctions. In a judgment for sanctions for willful and contumacious refusal to abide by the court's discovery orders, we are not entirely sure that a court needs any evidence of actual damages before entering judgment in accordance with pleadings. Maxey fails to present any authority demonstrating error in Case A. In any event, the judgments in Case A *were* supported by some testimony by Duvall that because of Maxey's defamatory state-

ments, the police conducted a surprise search of his home, and he also suffered the loss of his private investigator's license. Moreover, Maxey's motion to set aside the judgment did not demonstrate that the court abused its discretion in entering the judgment for sanctions.

In Case B, the very substantial judgments receive our concern because Case B involved a true default judgment in which Duvall presented virtually no testimony supporting any substantial damages apart from his assertion that because of Maxey's threats he was confined to the post office for a time. The court had very little detail about the allegations in Case B. Even the allegations in Duvall's petition were conclusory and vague. For example, concerning the post office incident, he alleged, *inter alia,*

> 7. On April 2, 2001 Plaintiff was in the U.S. Post Office in Holliday, Missouri, when Defendant James Ray Maxey entered into the lobby thereof and physically battered the Plaintiff.
> 8. ...Defendant Maxey deliberately and maliciously made offensive physical contact with the Plaintiff[.]
>
> . . . .
>
> 10. Not only was the contact offensive but, [sic] Defendant Maxey's body odor was also offensive and insulting.

Duvall also alleged, in addition to the post office incident, that Maxey made harassing telephone calls to Duvall and his family members and that Maxey maliciously instituted an action for an order of protection against Duvall.

The most serious accusation, on its face, would seem to be the allegation that Maxey maliciously prosecuted an action for an *ex parte* protection order, which Duvall defeated. No testimony, however, was presented as to any damages resulting from the *ex parte* order of protection, other than the reasonable implication that

Duvall was inconvenienced by having to appear and defeat the protection order.

In Case B, all matters in the petition were taken as true for liability purposes because Maxey failed to answer the petition. *See* Rule 59.01(a); *Killian Constr. Co. v. Tri–City Constr. Co.,* 693 S.W.2d 819, 827 (Mo.App.1985). A judgment of default was properly entered because Maxey failed to file an answer or otherwise defend. *See Killian,* 693 S.W.2d at 827. Even so, the trial court in a default case is to conduct a hearing on damages and base any ruling as to damages on actual evidence. *See Mprove v. KLT Telecom, Inc.,* 135 S.W.3d 481, 491 (Mo.App.2004). When a plaintiff has sued for an unliquidated sum, there must be some proof of damages in order to validly support an assessment of damages. *Beckmann v. Miceli Homes, Inc.,* 45 S.W.3d 533, 540 (Mo.App.2001).

The trial court is to consider whatever pertinent information is available to the court in assessing a damage award. When a claim is unliquidated, such as a typical tort claim, a default judgment is processed in two steps, pursuant to Rule 74.05. The court enters an interlocutory order of default, without a damage determination, and then the court separately conducts a hearing on damages. The court may proceed to determine damages in the absence of a defaulting party. Rule 74.05; *see, e.g., Cent. Am. Health Scis. Univ. v. Norouzian,* 236 S.W.3d 69, 85–87 (Mo.App.2007). The court may and should engage in any questioning it desires to help determine the factors pertinent to a just adjudication, avoiding an arbitrary one. While a defaulting defendant loses the right to contest the determination of liability, such a defendant is nevertheless entitled to have the court hear evidence as to the actual and punitive damages and is

entitled to have the court base its determination on the evidence adduced. *See Sayles,* 637 S.W.2d at 718–19; *Scott v. LeClercq,* 136 S.W.3d 183, 193–94 (Mo.App. 2004). "[W]hen the damages are unliquidated, the default is no admission of the amount of damages claimed, which then becomes a matter of proof." *Beckmann,* 45 S.W.3d at 541.

■ At the time of the filing of Case B, the facts would have indicated clearly to Duvall that Maxey had decided to procedurally default, based on Maxey's noncompliance with court orders as to discovery in Case A. Duvall then filed his second suit. This time, instead of seeking $50,000 actual and $150,000 punitive damages, as he did in the first suit, Duvall sought $500,000 actual damages and $1,500,000 punitive damages. Although Maxey did not respond, and Duvall was aware that Maxey had no intent to defend, Duvall nevertheless proceeded to propound discovery to Maxey. He included requests for admissions asking Maxey to admit that Duvall was "morally and legally entitled" to $500,000 actual damages and $1.5 million punitive damages. Maxey, of course, remaining in default, never answered the requests for admission. Although Duvall offered these so-called admissions at the damage hearing, and they were purportedly received in evidence, they could not constitute, in this context, substantive evidence of facts from which damage awards could be determined.

■ When a party has already defaulted and the facts lead one to conclude that such party will continue to default, there is no discovery purpose in sending requests for admissions to the defaulting party. In such a context, failures to answer requests for admission under Rule 59.01 have no evidentiary value. *Cf. Brunswick Corp. v. Briscoe,* 523 S.W.2d 115, 121–22 (Mo.App. 1975) (the trier of fact must consider the circumstances under which an admission was made); *Beckmann,* 45 S.W.3d at 541 (mere default is no admission of the amount of damages). Rule 74.05(b) contemplates a hearing on damages. At the hearing on damages, the party moving for a judgment must present some evidence to support the award requested. *Norouzian,* 236 S.W.3d at 84–85.

■ After a determination of actual damages based on evidence, the court is to determine any punitive damages in accordance with Fourteenth Amendment due process concerns. *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 177 (Mo.App. 1997). These constitutional concerns are both procedural and substantive. *Id.* "[T]he Due Process Clause of the [Fourteenth] Amendment requires that adequate [procedural] standards and controls be in place to prevent a punitive damage award from becoming an arbitrary deprivation of property." *Barnett v. La Societe Anonyme Turbomeca France,* 963 S.W.2d 639, 662 (Mo.App.1997). In considering a punitive damage award, a court should consider the factors set forth by the U.S. Supreme Court in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575–83, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and *State Farm Mut. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

The allegations in Case B *seem,* on their face, to be less substantial than those in Case A, particularly those set forth before the amendment of the pleadings included the malicious prosecution claim. Of course, the court was entitled to consider Duvall's recommendation in the light of the facts established by the pleadings and any evidence available, but the court is not to merely rubber stamp the plaintiff's recommendation, especially when the plaintiff fails to present evidence to support the damages he claimed. *See generally No-*

*rouzian,* 236 S.W.3d at 85–87 (testimony regarding lost salary was unduly speculative because it was based on unestablished assumptions).

Because of the lack of evidence, we hold that there was plain, obvious error in the determination of the damage awards in Case B. *Sayles,* 637 S.W.2d at 718. The court lacked evidence as to the extent of actual damages and, accordingly, also lacked evidence as to some of the factors on which to base an award of punitive damages in accordance with due process standards. *See Gore,* 517 U.S. at 575–83, 116 S.Ct. 1589.

On remand for rehearing in Case B, the court will remember that Maxey's conduct in Case A has already been punished separately in Case A. *See, e.g.,* Restatement (Second) of Torts sec. 909 cmt. E. The financial damage to Maxey from the amounts of the actual and punitive damage awards in Case A may be considered in relation to Maxey's financial position in Case B.

We vacate the judgment for actual and punitive damages in Case B and remand the case for a new hearing on the issues related to damages in that case. In view of Maxey's default, the factual assertions of Duvall's petition in the case will be accepted as true for liability purposes. *See Sayles,* 637 S.W.2d at 717. The facts related to the unliquidated damage awards are to be determined based on the competent evidence presented. *O'Connor v. Quiktrip Corp.,* 671 S.W.2d 17, 19 (Mo. App.1984). Maxey's failures to answer requests for admission are without probative value in this context. As indicated in *Sayles,* the defaulting party, Maxey, is entitled to participate, and to attempt to mitigate or defeat an award of damages. 637 S.W.2d at 717. Maxey is also entitled to have the court consider the evidence presented, and to have the court enter

awards in Case B based on pertinent factual evidence in the light of factors dictated by law. *See id.*

## VII. Motion for Sanctions

Duvall filed a motion to strike Maxey's brief for failure to comply with Rule 84.04, which was taken with the case. He requests that we impose damages pursuant to Rule 84.19. Duvall claims that Maxey's brief contains legally frivolous arguments and does not present a fair and concise statement of facts. Because we find error in the assessment of damages in Case B and remand for hearing, we deny the motion for sanctions.

## VIII. Conclusion

The judgments as to actual and punitive damages in Case B (WD 66986) are reversed. The case is remanded to the trial court for a hearing to assess damages in accordance with the instructions in this opinion. In all other respects, the judgments are affirmed. Each party shall bear their own costs on this appeal.

HARDWICK and WELSH, JJ., concur.